# CAPITAL CONNECTION, INC.

417 E. Virginia Street, Suite 1 • Tallahassee, Florida 32301
(850) 224-8870 • 1-800-342-8062 • Fax (850) 222-1222

St Matthews University

FILED
04 MAR -5 PM 2: 04
SECRETARY OF STATE
TALLAHASSEE, FLORIDA

_____ Art of Inc. File_____
_____ LTD Partnership File_____
✓ Foreign Corp. File_____
_____ L.C. File_____
_____ Fictitious Name File_____
_____ Trade/Service Mark_____
_____ Merger File_____
_____ Art. of Amend. File_____
_____ RA Resignation_____
_____ Dissolution / Withdrawal_____
_____ Annual Report / Reinstatement_____
✓ Cert. Copy_____
_____ Photo Copy_____
✓ Certificate of Good Standing_____
_____ Certificate of Status_____
_____ Certificate of Fictitious Name_____
_____ Corp Record Search_____
_____ Officer Search_____
_____ Fictitious Search_____
_____ Fictitious Owner Search_____
_____ Vehicle Search_____
_____ Driving Record_____
_____ UCC 1 or 3 File_____
_____ UCC 11 Search_____
_____ UCC 11 Retrieval_____
_____ Courier_____

Signature

Requested by:

Name          Date          Time

Walk-In _____          Will Pick Up _____

174  Ponder's Printing • Thomasville, GA 8/00



### FLORIDA DEPARTMENT OF STATE
Glenda E. Hood
Secretary of State



March 8, 2004

CAPITAL CONNECTION

TALLAHASSEE, FL

SUBJECT: ST. MATTHEW'S UNIVERSITY (CAYMAN) LTD.
Ref. Number: W04000009220

We have received your document for ST. MATTHEW'S UNIVERSITY (CAYMAN) LTD. and your check(s) totaling $87.50. However, the enclosed document has not been filed and is being returned for the following correction(s):

Please note that we have RETAINED your $87.50 payment.

You have used a FOR PROFIT CORPORATION FORM. Is this a "FOR PROFIT" corporation. Please note that non-profit corporations use another form.

ALSO, please state a PURPOSE for the coproration in Item 8.

AND ALSO, please note that since Florida doesn't accept LTD. as a corporate suffix, you will need to add "INC." after the "LTD." in the name on line 1.

Please return your document, along with a copy of this letter, within 60 days or your filing will be considered abandoned.

If you have any questions concerning the filing of your document, please call (850) 245-6914.

Buck Kohr
Document Specialist

Letter Number: 604A00015213

**RE-SUBMIT**
PLEASE OBTAIN THE ORIGINAL
FILE DATE

# TRANSMITTAL LETTER

**TO:**    Registration Section
        Division of Corporations

**SUBJECT:**    ST. Matthew's University (Cayman) Ltd., Corp.
        (Name of corporation - must include suffix)

Dear Sir or Madam:

The enclosed "Application by Foreign Corporation for Authorization to Transact Business in Florida", "Certificate of Existence", and check are submitted to register the above referenced foreign corporation to transact business in Florida.

Please return all correspondence concerning this matter to the following:

Michael A. Harris
        (Name of Person)

ST. Matthew's University
        (Firm/Company)

1005 W. College Blvd    Suite A
        (Address)

Niceville    FL    32578
        (City/State and Zip code)

For further information concerning this matter, please call:

Darlene Burke        at ( 850 ) 678-1225
(Name of Person)            (Area Code & Daytime Telephone Number)

**STREET ADDRESS:**
Registration Section
Division of Corporations
409 E. Gaines St.
Tallahassee, FL 32399

**MAILING ADDRESS:**
Registration Section
Division of Corporations
P.O. Box 6327
Tallahassee, FL 32314

Enclosed is a check for the following amount:

☐ $70.00 Filing Fee    ☐ $78.75 Filing Fee & Certificate of Status    ☐ $78.75 Filing Fee & Certified Copy    ☒ $87.50 Filing Fee, Certificate of Status & Certified Copy

# APPLICATION BY FOREIGN CORPORATION FOR AUTHORIZATION TO TRANSACT BUSINESS IN FLORIDA

*IN COMPLIANCE WITH SECTION 607.1503, FLORIDA STATUTES, THE FOLLOWING IS SUBMITTED TO REGISTER A FOREIGN CORPORATION TO TRANSACT BUSINESS IN THE STATE OF FLORIDA.*

1. _ST. Matthew's University ( Cayman) Ltd., CORP._
(Name of corporation; must include the word "INCORPORATED", "COMPANY", "CORPORATION" or words or abbreviations of like import in language as will clearly indicate that it is a corporation instead of a natural person or partnership if not so contained in the name at present.)

2. _Cayman Islands_     3. _98- 0567165_
(State or country under the law of which it is incorporated)     (FEI number, if applicable)

4. _2/1/02_     5. _perpetual_
(Date of incorporation)     (Duration: Year corp. will cease to exist or "perpetual")

6. _upon qualification_
(Date first transacted business in Florida. If corporation has not transacted business in Florida, insert "upon qualification.")
(SEE SECTIONS 607.1501, 607.1502 and 817.155, F.S.)

7. _P.O. Box 37830 SMB Safe Haven, Leeward Three, Grand Cayman_
(Principal office address)

_P.O. Box 37830 SMB Safe Haven, Leeward Three, Grand Cayman_
(Current mailing address)

8. _To carry on any trade or business or lawful activity and en_
(Purpose(s) of corporation authorized in home state or country to be carried out in state of Florida)
ter into any transactions whatever which can in the opinion

9. Name and **street address** of Florida registered agent: (P.O. Box or Mail Drop Box **NOT** acceptable)

Name: _Darlene Burke_

Office Address: _239 Wava Ave_

_Aliceville_ , Florida _35578_
(City)     (Zip code)

10. **Registered agent's acceptance:**
*Having been named as registered agent and to accept service of process for the above stated corporation at the place designated in this application, I hereby accept the appointment as registered agent and agree to act in this capacity. I further agree to comply with the provisions of all statutes relative to the proper and complete performance of my duties, and I am familiar with and accept the obligations of my position as registered agent.*

_(signature)_
(Registered agent's signature)

11. Attached is a certificate of existence duly authenticated, not more than 90 days prior to delivery of this application to the Department of State, by the Secretary of State or other official having custody of corporate records in the jurisdiction under the law of which it is incorporated.

✸ of the Board of Directors be advantageously or conveniently carried on by the Company which purpose the Company will have such powers as are not prohibited by law.

12. **Names and business addresses of officers and/or directors:**

## A. DIRECTORS

Chairman: *Michael A Harris*

Address: *1005 W College Blvd Suite A*

*Niceville FL 32578*

Vice Chairman: _____

Address: _____

_____

Director: *Galen P. Swartzendruber*

Address: *1921 Waldemere st. Suite 802*

*Sarasota FL 34239*

Director: *International Corporation Services Ltd*

Address: *P.O. Box 472  George Town*

*Grand Cayman, Cayman Islands*

## B. OFFICERS

President: *Michael A Harris*

Address: *1005 W College Blvd Suite A*

*Niceville FL 32528*

Vice President: *Jerry Thornton*

Address: *1750 W Broadway Street Suite 222*

*Oviedo FL 32765*

Secretary: *Galen P Swartzendruber*

Address: *1921 Waldemere St Suite 802      Sarasota FL 34239*

Treasurer: _____

Address: _____

**NOTE:** If necessary, you may attach an addendum to the application listing additional officers and/or directors.

13. _____
(Signature of Chairman, Vice Chairman, or any officer listed in number 12 of the application)

14. *Michael A Harris, Chairman*
(Typed or printed name and capacity of person signing application)



IC-115571

# Certificate Of Good Standing

TO WHOM IT MAY CONCERN

I DO HEREBY CERTIFY that

St. Matthew's University (Cayman) Ltd.

a company duly organized and existing under and by virtue of the Laws of The Cayman Islands is at the date of this certificate in Good Standing with the office, and duly authorized to exercise therein all the powers vested in the company.

Given under my hand and Seal at George Town in the Island of Grand Cayman this 1st day of March Two Thousand Four

An Authorised Officer,
Registry of Companies,
Cayman Islands, B.W.I.

REGISTRAR OF COMPANIES
CAYMAN ISLANDS

FLNB Local Form 5

## Exhibit Tag/ Cover Sheet

Party submitting: ___Plaintiff___   Ex. # _43_

Admitted: Yes  or   No  (circle one)

Debtor:___Julian Rodney Rooks Jr.___

Case No.:_____21-40139-KKS_____

*Adv. No.:*_____

Nature of Hearing/
Docket No:_____

_____

Dated     ___07/22___ , 20_21_.

By:_____,  Deputy Clerk

BEFORE THE
DIVISION OF LICENSING
MEDICAL BOARD OF CALIFORNIA
DEPARTMENT OF CONSUMER AFFAIRS
STATE OF CALIFORNIA

In the Matter of the Application of          )
                                             )
St. Matthew's University School of Medicine  )
Grand Cayman, British West Indies            )
_____)

## DECISION AND ORDER OF DISAPPROVAL

The attached report and recommendations of the site team that conducted the inspection of St. Matthew's University School of Medicine in May and June 2004 are hereby accepted and adopted by the Division of Licensing of the Medical Board of California, Department of Consumer Affairs, State of California. The Division determined that St. Matthew's University School of Medicine does not provide a medical education equivalent to that required in Sections 2089 and 2089.5 of the California Business and Professions Code and Title 16, California Code of Regulations Section 1314.1. Consequently, St. Matthew's University School of Medicine is disapproved under the provisions of Sections 2084, 2102 and 2135 of the California Business and Professions Code.

IT IS SO ORDERED this eighteenth day of February 2005.

MEDICAL BOARD OF CALIFORNIA

_____
James A. Bolton, Ph.D., President
Division of Licensing

December 15, 2004

To:        Division of Licensing
           Medical Board of California

From:      The Site Team

                    Harold J. Simon, M.D., Ph.D., Consultant
                    Richard Fantozzi, M.D., Member
                    Joyce Hadnot, Deputy Director
                    Anita Scuri, Legal Advisor
                    Martin Pops, M.D. (Chicago Site Visit)

Subject:   Report on Site Visits to St. Matthew's University School of
           Medicine, Its Branch Campus in Windham, Maine, and
           Teaching Hospitals Offering Clerkships to Its Students

## Introduction

A survey of the St. Matthew's University School of Medicine ("SMUSOM") campus in
Windham, Maine was conducted on May 11 and 12, 2004 by a team representing the
Division of Licensing of the Medical Board of California ("Division"). A team also visited
four teaching hospitals offering clerkships to SMUSOM students on May 24-25, 2004 in
Chicago, Illinois. Thereafter, the site team conducted a survey of the principal campus
on Grand Cayman, British West Indies, on June 17 and 18, 2004.

The purpose of the site visits was to determine whether the school provides an
educational program that is equivalent to the requirements of Business and Professions
Code Sections 2089 and 2089.5 and meets the requirements of Title 16 Cal. Code
Regs. sections 1314.1. The team members were Richard Fantozzi, M.D., division
member, Joyce Hadnot, Deputy Director of the MBC, Anita Scuri, Legal Counsel from
the Department of Consumer Affairs, and Harold Simon, M.D., licensing consultant.
Martin Pops, M.D., Ms. Hadnot, and Ms. Scuri conducted the site visit to four teaching
hospitals in the Chicago, Illinois

This report consists of three consolidated reports on the principal campus
on Grand Cayman, the Windham, Maine branch campus, and four
teaching hospitals in and near Chicago, Illinois that offer clerkships to
SMUSOM students, together with a recommendation from the site team.

1

## Part 1. Campus on Grand Cayman, British West Indies

The main purpose of this site visit was to review and evaluate the program at SMUSOM's main site on Grand Cayman Island (SMUCI). The evaluation was aimed at obtaining an overall perspective of SMUSOM. More specifically, the evaluation was intended to focus on the preclinical education of medical students in preparation for their clinical clerkships, on the physical facilities, on selection of and feedback from the hospitals utilized for clinical clerkships, on student life and support systems, on research, and on relations with local government

This portion of the report will address the following topics:

- Chronology and Rationale for Locating on Grand Cayman Island
- Ownership
- Administration
- Governance
- Faculty
- Admissions
- Students
- Pre-Clinical Curriculum
- Selection and Evaluation of Clerkship Sites
- Facilities on campus--Building, Classrooms, Laboratories, Residence hall
- Facilities off campus--Hospitals, Clinics, Physicians' Offices
- Library and Learning Resources
- Research
- Relations with Local Government

## Chronology of the Request by SMUSOM for Recognition and Rationale for Locating on Grand Cayman Island

SMUSOM was conceived in **1996** and chartered in **1997.** The first class of medical students matriculated in September of that year on Ambergris Cay in Belize, Central America. SMUSOM submitted the first request for recognition by California in **July 1998**. A report covering the documentation submitted by SMUSOM and requesting additional information was submitted to the Division in **June 2000.** Hurricane Keith struck that location in **October 2000,** seriously damaging the facilities, necessitating a temporary relocation to the University of Central Florida, and obviating a possible site visit at that time.

In **August 2001,** the Division became aware of serious turmoil on the Belize campus resulting in the eventual loss of all facilities there.

Under new ownership, an essentially completely new central administration, and with a small cadre from Belize, a search for an alternate site eventually focused on the Cayman Islands whose economy was then at a low point. Further investigations identified a building then occupied by the local Cable and Wireless Company and available for leasing. It appeared ideal for serving SMUSOM's information technology needs. Cordial relations were established with the local government, the necessary permits obtained, a lease on the building signed, and SMUSOM relocated to Grand Cayman in **May 2002.**

The Division deemed the information then on hand obsolete. SMUSOM was asked to submit a new application, which reached the Division in **September 2002.** This set of documents was reviewed by the Division in **January 2003.** A decision to make site visits was rendered in **May 2003** to take place later that year. Changes in California's government delayed approval for site team travel until **May 2004,** when the first two of the three mandated site visits took place.

## Ownership

SMUSOM is a proprietary, for-profit institution that derives all of its income from student tuition and fees. It is owned by 3 individuals - Michael Harris, M.D., President and CEO, Galen Swartzendruber, M.D., investor, and S. K. Asthana, M.D., all located in Niceville, FLA - who also comprise the Board of Directors.

## Administration

The SMUSOM administration is headed by Michael Harris, M.D., President and CEO, who reports to the Board of Trustees (vide infra). Dr. Harris is directly responsible for strategic planning, relations with diverse governmental officials, and the overall budget and other fiscal matters. He is the ultimate authority but reports to the Board of Trustees (see **Governance**) on issues pertaining to academic matters, hiring and firing of faculty, salaries, publications, locating and acquiring sites to meet the requirements of the academic mission and accommodations for students, and authorizing issuance of diplomas.

Dr. Harris' base and OB/GYN practice are located in Niceville, Florida, near SMUSOM's head office in Oviedo, Florida. He heads the Board of Directors and divides his time between Florida and SMUCI with occasional visits to the Maine campus. .

Dr. Harris is an expert in matters of locating desirable real estate and its acquisition (See **Facilities**).

Dr. Harris is assisted by a Vice President, a Chief Financial Officer (CFO) and a large number of Deans. The Deans oversee the academic activities of their respective faculties, coordinate interactions—such as they are-- between them at SMUCI and the SMUM site in Maine, and formulate and propose budgets for presentation to the President,

Jerry Thornton, Ph.D., Vice President and Chief Operations Officer (COO) has been with SMUSOM since Belize days. He is in charge of operations at the head office in Florida, which includes admissions, financial aid, marketing and advertising. He has also been the principal contact between SMUSOM and the Division.

B. D. Owens, Ph.D., is Chief Financial Officer (CFO) and oversees the controller, financial matters and ancillary services, including student residences. He participates in the search for suitable real estate for acquisition by the institution.

The SMUSOM administration is enthusiastic, innovative, effective and responsive to the needs of a growing institution. It is also very effective in matters pertaining to real estate acquisitions and relations with governmental authorities.

## Governance

Governance of SMUSOM is vested in the Board of Trustees, which may delegate authority. Delegation is primarily to the President or the COO who may re-delegate authority to Deans and other Administrative Officers. The Board of Trustees is composed of four members who have no financial ties to the institution and who serve without financial compensation other than reimbursement for travel expenses incurred in connection with its meetings. The Board meets four times yearly, including once at SMUCI. The current Board members are:

Elizabeth Armstrong, Ph.D., Associate Professor of Pediatrics, Harvard Medical School, Boston, Massachusetts;
Mark Stewart Calkins, M.D., Physician, Niceville, Florida;
Stephen P. Doheny, M.D., Physician, Niceville, Florida; and
James P. Richburg, Ed.D., President, Oskaloosa Community College, Niceville, Florida.

Responsibilities of the Board of Trustees are specified in its by-laws.

4

## Faculty

The basic science faculty is comprised of individuals who, with very few exceptions, have been with SMUCI *for considerably less than two years.* In many cases, in fact, individual faculty members in responsible positions had only been on site *for a few weeks or months prior to this site visit.*

In Maine, faculty are employed on short-term contracts ranging from one to three years, renewable solely at the institution's pleasure. In Grand Cayman, continuing employment at SMUCI is also contingent on approval of visa extensions by the local government. A few faculty members have 5-year contracts, but most have one-year contracts due to government regulations. This policy partly reflects the administration's desire for change, as may be needed, and partly the limitations on visas for work in the Cayman Islands. Faculty indicated that some students are acting (and being paid) as teaching assistants. *There is no academic tenure.*

Students expressed their appreciation to the site visitors for the close and continuing interactions with the faculty who are said to be generally available. Students interviewed during the Chicago site visits uniformly expressed their opinion that the quality of the education they received in Maine was far superior to that which they received on Grand Cayman.

## Admissions

Admissions requirements, criteria and procedures are spelled out in the catalogue. The completed application file must consist of the following:

- Completed application form
- Personal statement
- Three letters of recommendation
- Official academic transcripts
- TOEFL score of 550 or greater
- MCAT scores (if available but not required)
- $75 non-refundable application fee
- Six current passport photos
- Request for financial support, if applicable
- Financial aid forms and backup (if applying for financial aid)
- Proof of health insurance coverage, application, or waiver

Students with foreign (non-U.S.) transcripts are required to present evaluations on a course-by-course basis from the World Evaluation Services or other credentialing authority.

A pre-admission undergraduate degree is preferred but not required. 90+ semester credit hours are considered sufficient to satisfy the pre-medical academic preparation requirements. A GPA of 3.0 or better is preferred *but significant numbers of students whose records fall below - and even much below - that level have been accepted.* An extended pathway exists at two other offshore sites for those deemed inadequately prepared for the study of medicine yet give promise of eventual success.

Students are required to be computer literate and to bring their own lap tops to school.

Applications are submitted to the Oviedo, Florida, office. When completed, they are electronically scanned and immediately made available to the Admissions Office at SMUCI for review, screening and scoring by two members of the Admissions Committee who also rate the institutions at which applicants completed their previous studies. If the screeners are in accord, their decision is final. If in disagreement, they consult with each other in efforts to reach agreement. If agreement is still lacking, files are reviewed by the full Admissions Committee, which renders the final decision.

Students offered acceptance are so notified, interviewed in person or by phone, and provided with informational materials about SMUSOM's programs, requirements, location, living conditions, housing, required immigration documents and learning materials. They have two weeks to submit a non-refundable $500 deposit, which is applied to the first year's tuition.

Discussions about the student's ability to finance his/her education are initiated. The overall cost approximates US$200,000. The school has arranged for low cost loans up to the full amount, as may be needed. When questioned by a team member, students did not know the terms and conditions of their loans. The school should provide students with more information as to the nature and effects of the large long-term debt they will be accruing.

The applicant/acceptance ratio typically runs 3:2 (i.e., 40% are rejected at this stage). As a rule, 90% of those who meet the admission criteria will be accepted. Of these, some 50-60% will actually matriculate. *Note: This small ratio of applicants to acceptances suggests an insufficiently critical discriminatory admissions policy and consequent practices which*

*may account - at least in part - for the apparently high attrition rate and
the 19% figure for students in academic difficulties in the first year.*

Prior to matriculation, and before issuing a visa, the Caymanian
government requires documentary evidence from the civil authorities of a
clean record covering the student's past 10 years' residences. (***Note:***
*Some unresolved questions about specifics in this connection have been
posed to the Caymanian Ministry of Education but the team has not
received an answer.)*

***Note:*** *SMUSOM literature states that **transfer students** are accepted up
to the beginning of the 5th semester. Specific inquiries (in Maine)
indicated that some transfers have been accepted up to and even into the
4th year although this practice is said to have been abandoned recently.
Transfers in the last year of medical school are not acceptable under
California law (Business and Professions Code 2089(a). Requirements
for transfers are identical to those for entering 1st year students plus
transcripts from their previous medical school(s). They must not have
been dismissed for ethical or behavioral causes.*

## Students

Enrollment has grown rapidly from the first class of 25 students in
September 1997 in Belize to more than 300 currently at SMUCI and
Maine and well above that number in the clinical years. Current total
enrollment for the entire school is approximately 645 students.

Since the beginning, *263 students have graduated, 158 have withdrawn,
and 29 have been dismissed. Of the graduates, 2 have completed
residency training, 101 are in their residencies and the present status of
36 is unknown. 134 students are currently in clinical rotations in the U.S.*

Among those listed as withdrawn, the present status of 101 is unknown.

The student body is composed mainly of Americans (approximately
85%), with a smattering of students from Canada, Caribbean and other
ccuntries. Many tried and failed to gain admission to U.S. medical
schools; some did not apply to U.S. schools because they believed they
could not compete effectively (grades, MCAT scores); and quite a few
transferred in from other Caribbean medical schools (notably Ross, AUC
and St. Lucia). A significant number chose the study of medicine after
having had other successful careers (in professional sports, business,
law and paramedical fields), or having earned advanced degrees in non-
medical sciences and later decided on the study of medicine.

A wide range of student support services includes academic and personal counseling, financial aid, and arrangements for health care. Student housing is available in the Residence Hall, and a housing service helps to arrange off-campus accommodations. A local chapter of the American Medical Student Association is supplemented by several other student organizations and clubs which arrange educational, social and sporting activities.  A nearby SMU-owned athletic field is available for soccer and other field events.

A system of student government works closely with the Administration.

By all indications, students are eminently satisfied with these arrangements and appreciative of SMUSOM's efforts on their behalf.


## PreClinical Curriculm

The courses taught in the preclinical curriculum correspond to the constellation of those usually covered in the preclinical curriculum of U.S. medical schools. Specific comments regarding the supporting materials, examination policy and practices, as well as the imaginative approaches to the ICM and CP courses at both Maine and Grand Cayman, are included elsewhere in this consolidated report.


## Selection and Evaluation of Clerkship Sites

Upon completion of the pre-clinical 5 semesters at SMUCI and in Maine, students leave the respective sites to embark on their core clinical clerkships in hospitals affiliated with SMUSOM in the District of Columbia and 11 States including Florida, New York, Illinois, Georgia and Maryland.  In addition, 6 hospitals in the UK and 1 in Canada are utilized for core clerkships. Approximately 80% to 90% of clinical core rotations take place in the Chicago and Atlanta areas. Most U.S. hospitals used for core rotations are ACGME accredited. A list of criteria exists for determining eligibility of a potential site for clinical instruction. *Satisfactory completion of the USMLE Part 1 prior to commencing a clerkship is not required by all of these hospitals.  Until January 1, 2004, the school assigned students to clinical rotations who had not taken or passed Step 1.  Beginning January 1, 2004, the school will not assign a student to clinical rotations without formal notification that the student has passed Step 1.*

Each hospital used for core rotations is supposed to have a formal affiliation agreement with SMUSOM and a director of medical education (DME) appointed to the SMUSOM clinical faculty to oversee clerkship

arrangements. *The site visit in Chicago indicated that some such affiliation agreements are in verbal form and others have been arranged with an individual physician and not with the institution itself.*

In the middle of the 5th semester, students receive an orientation session from the Dean for Clinical Sciences about the hospitals available for core clerkships. Recently, the Chair for Preclinical Studies brought an upper class student to assist in the orientation. *There is no formal arrangement for providing feedback from more senior students or graduates to 5th semester students concerning advantages or disadvantages of specific training sites  (By the same token, there is no formal feedback system from graduates about their satisfaction level with the education received at and through SMUSOM. Nor is the tracking system of graduates anywhere nearly complete (see below).* These omissions would seem particularly worrisome in such a new school with a minimal track record. *An alumni organization might prove useful for these purposes.*

There are, however, web sites, chat rooms and contacts with upper class friends that may be accessed by individual students; and some pertinent information is logged in the files of the Dean for Clinical Sciences.

SMUSOM claims that each site used for core rotations was visited at least yearly by each chief of each department. The team was advised that the review process has been modified and that now one chief will conduct the site visits for all of the sites. Currently, that individual is an internist who has been with SMUSOM for approximately one year. Information gained at the site visit indicated that this individual's inspection might consist of *one to one and half hours at a particular site, including lunch, and might well cover several sites in one or two days. Most worrisome is the fact that an individual representing one clinical discipline might well review several core clerkships in a variety of clinical disciplines if conducted in the same institution.*

SMUSOM's clinical curriculum comprises 46 weeks of core clinical clerkships in the 3rd year and 30 weeks of selective and elective clerkships in the 4th year. The 3rd year core includes a total of 46 weeks, as follows::

- Internal Medicine  12 weeks
- Surgery  12 weeks
- Pediatrics  6 weeks
- Ob/Gyn  6 weeks
- Family Practice  4 weeks
- Psychiatry  6 weeks

The 4th year curriculum consists of a combination of 16 weeks from an approved list of selectives and 14 weeks of freely chosen elective clerkships each of which may run for 4, 6, or 8 weeks in duration.

Whereas the core clinical clerkship sites in the relatively small number of States in which they are carried on are selected and monitored by or under the aegis of the Dean for Clinical Sciences, the elective clerkships are located in 38 States, the UK, Canada and Ireland. Students find their own electives. The school gives them a list of locations previously utilized by SMUSOM students. Their selection is determined in accord with several factors, including *person-to-person interactions among physicians on the faculty with personal contacts/knowledge of such sites, and students' and/or their parents' requests for clerkships in the vicinity of their homes and/or potential practice locations, etc. This practice has resulted in some electives in non-teaching hospitals.*

Supervising faculty are required to submit performance and demeanor evaluations for every student's clinical experience.

## Facilities

The entire campus is fiber optic wired and features a fully functional campus-wide computer system. A comprehensive wireless capability enables all students to obtain server-stored materials, go on the web, search journals and reference works, and communicate directly with faculty and other students.

The **principal base** for SMUCI consists of a 21,000 sq.ft. building containing administrative and faculty offices and three classrooms equipped for electronic data presentations and communications seating upwards of 120 students each.

This building also houses an anatomy/histology laboratory with several plastinated cadavers, anatomical models, microscopes, and slides which can be projected onto an overhead display.

Other facilities include a small microbiology laboratory in which some basic techniques are demonstrated; rudimentary physiology and pathology laboratories; a large room subdivided to serve the needs of the 4th and 5th semester ICM and Patient Care courses; some facilities equipped with data ports for student use; and some space for recreation. This building is leased from "Cable and Wireless", a local company which had installed extensive electronic capabilities for both hard-wired and wireless communications that eminently suited SMUCI's needs. The

lease has one year to run and may be renewed for an additional three years. Drs. Harris and Owens are actively pursuing a nearby location for purchase and use on a permanent basis.

Initially, only the two upper floors were used by SMUCI, which has lately taken over the entire building.

This building is air-conditioned and much used by students for their studies. It used to be open 24/7 but the hours have recently been reduced much to the students' regret. They have expressed hopes that the status quo ante will soon be restored.

The **Residence Hall** for students is owned by the SMUSOM corporation and was acquired under extremely favorable terms. It is a modern building located about a mile distant from the main campus along the highway connecting both sites. It can accommodate 82 persons in single and double occupancy rooms. Security arrangements include several strategically placed surveillance cameras and 24-hour watch personnel.

In addition to the dormitory there is a swimming pool with a good amount of deck space, chairs and umbrellas, and a fully equipped kitchen for student use.

(It may be noted in passing that the students expressed their delight in and admiration for the administration's seeing to the rapid development of excellent facilities and for the attention paid to their needs and requests).

The **clinical facilities** available to SMUCI consist of two hospitals, physicians' offices and clinics utilized for instruction of 4th and 5th semester students. With patients' permission, students spend 2 to 4 hours weekly shadowing physicians and observing procedures. These activities are integral with the ICM and Patient Care (Clinical Procedures) courses and are designed to prepare students for the clinical clerkships by introducing them to the nature and culture of medical practice, physician-patient interactions, medical ethics, and the nature of and interactions with the health care team.

Instruction at the clinical sites is coordinated by the Chair for Preclinical Studies, Dr. Gordon Green, a recently arrived pediatrician from Canada with extensive experience in pediatric emergencies, advanced training in public health, and a deep interest in recent developments in medical education. He is very well qualified for his critically important roles, personally participates in all clinical activities, and seems highly regarded by students and local medical personnel.

11

By all indications these instructional activities are well received by students and the voluntary teaching faculty who seem interested in and enthusiastic about their teaching roles.

The 128-bed **George Town Hospital** is the main medical facility for the Cayman Islands. It is a recently completely refurbished, clean, airy facility which provides a complete range of medical and surgical services with the exception of cardiac and intracranial surgery. Patients requiring these and other high intensity services are airlifted to US hospitals in Florida or Texas at government's or insurance carrier's expense.

The Chrissie **Tomlinson** Hospital is a modern, clean, airy, fully equipped private facility housing 18 Beds, four of which are maternity beds.

**Note**: All residents on the Caymans are required to carry health insurance. This also applies to the SMUCI community. At present, the government pays the entire cost for civil service employees, indigents and their families but this will change later this year to a bilateral contributory system. A scheme for co-payments will also be introduced to limit abuses and overuse. For the private sector, premiums are shared equally between employer and employee.

<u>Library and Learning Resources</u>

A very capable professional librarian supervises the **campus library**, which houses a limited number of books and journals. It provides access to most of the biomedical data bases and adjunct resources and subscribes to services which enable access to most of the journals students and faculty might require for study and in support of eventual research projects.

The library supports and is supported by informational technology in the form of a **virtual living/learning environment** which provides access to and between all students and faculty anywhere on campus and including the residence hall (vide infra). Included among its features and services are

- Facilities for video conferences - which may include communications between SMUCI and SMUM;
- Stored folders for every professor's lectures in power point format;
- Projectors and desktop machines in the classrooms;
- High speed Internet access on campus and the residence hall;
- Voice-over IP phone system; and
- A variety of on-line resources.

12

## Research

The issue of research being conducted by SMUCI faculty and involving student participation is of utmost importance for the following reasons:

- To maintain and enhance the continuing effectiveness of the faculty to teach at the cutting edge of their discipline;
- For faculty to serve as role models for students;
- To enable students to observe, study and participate in the research process; and
- To enable students to learn critical assessment of the research process, results and publications.

*None of these objectives is within reach at SMUCI at the present time. Perhaps a journal club might be a useful beginning to address issues related to review and analysis of published research in pursuit of some of these objectives.*

*Most of the faculty are not now and have not been engaged in active research endeavors for the past several years. Most of the faculty have authored no publications in peer-reviewed journals for years past. No extramural funds for research are currently targeted for SMUCI, which has allocated small amounts in support of some projected research activities on the island.* These are intended to involve some faculty and students in studies involving the local biota and presumptive genetic peculiarities among the indigenous population.

*At the site visit, the Dean for Research was unable to answer a question as to the existence of a budgetary line item for research. When a "Research " page from the itemized budget was eventually produced, it indicated that approximately $600,000 were being devoted to this topic. Of this amount, $250,000 was identified as supporting the off-site project indicated above, the proposal for which had not yet been submitted.. These funds will not be provided to SMUCI but to the institution at which that project is actually being conducted. Almost all the remaining funds identified within the research category are targeted for supporting activities – half of two faculty members' salaries and ten percent of other faculty members' salaries, housing, vehicles, transportation, utilities, mail, etc., and seem to relate to ongoing supporting services and overhead at SMUCI. The school allocates a maximum of $2,500 per faculty member making a presentation, a total of $3,000 seed money for student projects, and $850 in "prize money" for a student competition. No extramural funds in support of research have been received at SMUCI at this time.*

SMUCI has made available some small amounts to support research on the island by a few students with prior research experience and under faculty supervision. Some equipment and glassware destined for these projects had apparently arrived just before the site visit. These projects should get under weigh in the near future.

The site visiting team was informed of several ideas for research to be conducted eventually on site by faculty with student involvement but these are not yet in being. Moreover, no facilities dedicated to the conduct of research activities were identified.

SMUSOM has established a (U.S.-IRS code) section 501(c)(3) foundation to eventually receive tax- favored extramural contributions in support of research and other qualified activities.

It may be presumed that interesting topics for research will eventually be identified and pursued by faculty and students. Such efforts are still destined for the future.


## Relations with Local Government

In company with members of the SMUSOM Board of Directors and Administrators, the site visitors met in his office with the Hon. Roy Bodden, Minister for Education, Human Resources and Culture. Government clearly views the arrival and continuing presence of SMUSOM as a major and most welcome addition to the Caymans' economy. The Minister insisted that due diligence had been conducted prior to granting permission for SMUSOM's relocation there. This is said to have involved background checks on each of the Directors in terms of their financial history and police records.

The Minister maintained that SMUSOM's aims, objectives, curriculum plans and involvement with local institutions and the medical profession met with approval after having been subjected to careful scrutiny. With an advanced degree in education, the Minister reviewed and applauds SMUSOM's educational direction and activities. He declared himself pleased that SMUSOM offers one full scholarship annually for a Caymanian citizen.

The Minister stated that incoming students must apply for a visa to be renewed biennially. The initial application must be accompanied by a letter from the police authority at the student's current residence and speaking to any problems with the law. Inquiries are said also to involve communications with the FBI and Interpol, as appropriate. It is not clear whether convictions for felonies or misdemeanors would preclude

admission to the island. It may be that background checks only cover a student's residence over the past 5 years, if that. *An inquiry along these lines was directed to the Minister by e-mail but no reply has as yet been forthcoming*

SMUSOM graduates are eligible for licensure (registration) to practice in the Caymans provided they can find a sponsor and obtain a visa/work permit (a fairly complicated process). The government imposes strict controls on this privilege, including on the mix of medial specialties intended to meet the defined needs of the population.

A private, mostly social meeting between one site visitor (Dr. Simon) and the Honorable Gilbert McLean, Minister for Health Services, Agriculture, Aviation and Works and the Chief Health Officer, Dr. K. Kumar, resulted in essentially the same welcome, laudatory comments and appraisals. On direct questioning, the latter indicated some interest in personal involvement in SMUSOM's ongoing activities.

## Part 2. Branch Campus in Windham, Maine

This portion of the report will concentrate on matters chiefly pertaining to the SMUM branch campus unless otherwise indicated. It will address the following:

   Rationale for seeking a Branch Campus and its Selection
   Advantages of the MD/MHSA Program to SMUSOM and SJCOM
   Interrelationships between the two Degree Programs
   Curriculum at SMUM
   Selection of Students for the SMUM Program
   Evaluation of Student's Progress
   Support for Students at SMUM
   Physical Facilities
   Advantages/Disadvantages of the SMUM Program
   Faculty
   Research
   Academic Interactions between Grand Cayman and SMUM
   Summary and Conclusions
   Acknowledgment

The following is based on interviews with faculty, students and administrators of SMUM, inspection of selected physical facilities, and literature provided to the team by SMUSOM and SMUM.

## Rationale for Seeking a Branch Campus and Its Selection

According to the information provided, SMUSOM determined that a satellite campus on the U.S. mainland and offering a Master's Degree in matters relating to medical economics and administration would enhance SMUSOM's image and serve as an effective marketing device for attracting students in a competitive environment. Accordingly, SMUSOM administrators sought a connection with an institution offering an instructional program which would serve medical students' needs and interests toward both conducting an efficient medical practice and possibly offering additional or alternate career opportunities.

Through prior personal contacts between representatives of SMUSOM and St. Joseph's College of Maine "(SJCOM"), an ongoing on-site and distance-learning program leading to a Master's Degree in Health Science Administration (MHSA) was identified at SJCOM in Windham ME, and deemed suitable for the stated purposes. Negotiations between the two institutions led to formal agreements and the first SMUSOM students were concurrently enrolled in the SJCOM MHSA program in the Year 2000.

## Advantages of the MD/MHSA Program for SMUSOM and SJCOM

The advantages for SMUSOM are the uniqueness of this offering among offshore medical schools catering primarily to U.S. students, i.e., as a marketing device; a location on the U.S. mainland for U.S. and other students enrolled in an offshore medical school; and for some SMUSOM students to interact - albeit on a limited basis - with students pursuing other fields of endeavor.

The principal benefit for SJCOM seems to be the income from tuition paid by the SMUSOM students - amounting to $250/ credit unit for a total of $11,250/student for the entire course of study. Additionally, students from other disciplines pursuing the MHSA program seem to benefit from their occasional interactions with SMUSOM students.

## Interrelationships Between the Two Degree Programs

SMUSOM students enrolled in the MHSA program are enrolled separately in SJCOM and pay tuition and fees separately to the two institutions. The application/admissions processes for the two programs are also completely separate.

The MHSA program consists of 15 courses at 3 units/course, for a total of 45 units. The tuition amounts to $250/unit for a total of $11,250 for the complete program. SMUSOM students enrolled in the MHSA program are required to have completed at least one semester's course work (2 courses = 6 units) on the Grand Cayman campus, but exceptions can and have been made (to this and most other "requirements").

Students may be selected for the MHSA program at any time before the beginning of the 3rd semester. They 'must' take 2 MHSA courses in each semester on Grand Cayman. SJCOM has stationed two faculty members there for this purpose. They are not directly affiliated with SMUSOM.

At SMUM, students take 2 MHSA courses/semester in each of the 4th and 5th semesters. For the SMUM students, these courses are taught in the evening on the SJCOM campus by SJCOM faculty. Except for those students pursuing the 5th semester in the summer, the SMUM students do not interact with SJCOM students. In the summer, SMUM students' classes are shared with MHSA graduate students from elsewhere. They may also live in the dormitories on the SJCOM campus.

SJCOM faculty teaching SMUM students receive stipends from SMUSOM.

The remaining units/courses to complete the requirements for the MHSA are taken in the "distance learning" mode utilized by SJCOM for the past 2 decades. Typically, students are required to take at least one course/semester in the "distance learning" mode but this requirement may be and is often modified for the SMUM students because of the time commitments required by clinical clerkships and residencies. SJCOM has approximately 950 students on campus. It also has 2,500 undergraduate students and 2,000 graduate students, all engaged in distance learning. 34 SMUSOM students have graduated with a degree from SJCOM since 1998.

Students enrolled in the joint degree program have declared career interests in hospital administration, managing their own practices, and even forsaking a medical career entirely in favor of full time involvement in some non-medical career.

At present, some 55 students are enrolled at SMUM in the joint degree program.

### Curriculum at SMUM

The SMUM academic program addresses the 4th and 5th semester courses in the SMUSOM medical curriculum. Whereas the course titles at

SMUM are identical with those on Grand Cayman, there is limited interaction as between the 2 faculties and essentially no effort made to standardize or coordinate course or examination content between the 2 locations.

Course content and presentation sequence are apparently determined on the basis of chapters in text books, audio-visual and other materials obtained from various sources, and the faculty's personal files.

The basic science courses include pharmacology, clinical therapeutics, pathology, microbiology and a mini exposure to clinical laboratory medicine. In clinical therapeutics a microbiology laboratory experience is said to be just getting under weigh and will cover bacterial cultures and susceptibilities to antimicrobials, and a computer modeled epidemic.

The preclinical courses include Patient Care I and II (essentially ICM-History and Physical Examination); Clinical Skills - specific diagnostic examinations and procedures; Current Topics in Medicine - attendance at medical grand rounds at the Maine Medical Center ("MMC") followed by a lecture on a specific clinical problem.

ICM and CS courses see students interviewing and practicing selected clinical techniques on plastic models and on each other. A limited exposure to simulated patients is being introduced.
They also interview patients at Mercy Hospitals and in the clinics and doctors' offices.

## Selection of Students for SMUM

Students volunteer for this experience.  They are selected on the basis of a personal interview on Grand Cayman and satisfactory performance in their course work.  Students may enter into the joint degree program at any time before the 3rd semester but 'must' take at least two courses toward the MHSA degree before coming to Maine.  This requires enrollment in the MHSA program not later than the 3rd semester. On occasion, students have been permitted to transfer directly into the 4th semester in Maine from another offshore medical school, but this is said not to be possible anymore.

As an aside, students have been and are permitted to transfer directly into the 4th year at SMUSOM from another offshore medical school by special permission from the Clinical Dean (a practice generally not permitted under LCME rules and specifically not permitted under California Business and Professions Code Section 2089(a)).

18

In general SMUSOM students tend to be older than the usual run of medical students. They have often pursued other activities, especially paramedical careers, prior to commencing medical studies.

## Evaluation of Students' Progress

At SMUM each student's progress is monitored closely. In the 15 week courses, if a student seems to be in academic trouble by week 7 or 8 s/he may self -refer or be referred for counseling. Attempts are made to determine the cause(s) and remediation is proposed. Students may also opt to discontinue the course, receive a W letter on their transcript and resume at the next opportunity.

The usual causes for problems showing up in marginal or poor academic performance involve medical, family, psychological or financial matters and assistance is aimed at diagnosis and remediation, if possible.

If still or newly in trouble at week 12, the student is advised to withdraw and repeat at a later date. S/he will be advised that continuing on is at his/her own risk and might well result in a failing grade. A student may repeat a course once but will be dismissed after 2 failures in the same course.
With a course value of 4 units apiece, any combination of W and F grades amounting to 24 units will result in dismissal by SMUSOM. Moreover, since MSHA enrollment presupposes enrollment at SMUSOM, discontinuation also means the end of enrollment at SJCOM.

The faculty estimates that +/- 80% pass USMLE on first 2 tries. They may be permitted to begin a clerkship in the US without having passed Step 1 but must have documented passage by 90 days or discontinue. They may continue without having passed in UK hospitals.

## Support for Students at SMUM:

A) Medical: Students requiring medical attention are seen at student health at SJCOM and by local physicians, and hospitalized at MMC, if required.

B) Mental Health: Students may refer themselves or be referred for counseling to the Dean of students who may act as counselor and/or refer to mental health professionals at SJCOM.

C) Financial Aid: Students may be eligible for one or more established bank loan programs up to the full costs of tuition, fees, and living

expenses ($190,000) with repayment deferred until after residency training.

It should be noted that the director of student affairs does not have access to the student information compiled by the dean in Grand Cayman.

## Physical Facilities (Classrooms, Hospitals, Clinics, Offices, Libraries, Laboratories)

SMUSOM owns a 6,300-sq. ft. brick and wood 2-story building just off the highway and 3.5 miles distant from the SJCOM campus along a winding, lakeside road. This building houses 2 classrooms utilized for the clinical skills (CS) course, an extremely small library with computer-based access to the major data bases, and faculty offices. Some 3,000 sq. ft. are lent to SJCOM until Fall 2004 to house support facilities for the "distance learning" program.

SMUSOM also leases a tripartite, one-story wooden bungalow behind the above-mentioned building which houses 2 essentially bare classrooms and administrative offices.

SMUSOM utilizes facilities in Portland ME, (approximately 30-45 minutes by automobile from the Windham facility) at the Maine Medical Center (MMC), Mercy Hospital, and the Foundation for Blood Research, and clinics and physicians' offices scattered throughout the area.

At the MMC, SMUM students have access to classrooms, auditoria, and a large, fully equipped library. MMC is an affiliate of the University of Vermont School of Medicine and medical students from that college, from Dartmouth, Harvard, Tufts and elsewhere rotate through the MMC. There seems to be little interaction between the SMUM students and the others in the 4th semester, although there is expected to be more in the 5th semester.

Clinical clerkships are not available for SMUSOM students in Maine, apparently at the behest of the University of Vermont.

At Mercy Hospital, students shadow Physician Assistants (PA) and their physician supervisors from admission to discharge as part of their Introduction to Clinical Medicine (ICM) and CS courses. They experience their first exposure to sick and injured patients in this setting.

At the Foundation for Blood Research, a freestanding, grant-supported research organization, students spend up to 8 hours in their only laboratory experience while in Maine. In a well- equipped research

laboratory, this experience consists of exposure to a few, selected laboratory techniques - e.g., ELISA, PCR, and DNA gel electrophoresis - related to a specific clinical problem.

In the offices and clinics, students shadow mainly primary care physicians as part of their ICM and CS courses.

At SJCOM, students have access to a large library, good dining facilities, and medical and mental health services.

The teaching faculty are compensated on an hourly basis by SMUSOM.


## Advantages/Disadvantages of the SMUM Program

Advantages:
--Education and training to cope with administrative, legal and financial aspects of a medical practice, hospital administration, or other careers relating to the medical/health care arena.
--Education and training for a career in medical administration as an option for a second or alternate career.
--Location on the U.S. mainland.
--Varied selection of settings for ICM and CS courses, including a major teaching hospital (MMC) with superb library facilities.
--Some interactions with students from U.S. medical schools.
--SJCOM's storybook location in a bucolic lakeshore setting.

Disadvantages:
--Remote location of the SMUM base in Windham ME.
--Travel time in excess of 30 minutes each way between the Windham campus and the clinical facilities in Portland.
--Dearth of interactions with the majority of SMUSOM students, other medical students, students at SJCOM, and with more than a very limited number of faculty, especially in the basic sciences.
--Essentially no opportunity to observe - let alone participate in research - medical or other.
--Limited base/sources of information available concerning potential clinical sites and also previous experiences of SMUSOM or other medical students at potential clinical clerkship sites in the U.S. and UK.

21

## SMUM Faculty

Basic science courses at SMUM are taught in classrooms mostly by retired clinicians and/or those from academic positions elsewhere with backgrounds and interests in particular fields of instruction.

The basic science faculty presented to the site visitors included representatives from pharmacology, therapeutics, pathology and microbiology. They were enthusiastic both about the students and the opportunities to teach. For teaching they utilize lectures often in power-point format from notes and summaries of literature sources. Standard databases are available both through the libraries and through personal computers.

ICM and CS are taught in part by retired medical practitioners and in part by actively practicing physicians, nurses and paramedical personnel in classrooms, clinics and offices, and in diverse hospital settings, including attending at grand rounds at MMC. The faculty presented to the site visitors were enthusiastic - even passionate - about teaching their topics.

There is little evidence of activities at SMUM aimed at keeping faculty current in the fields in which they are teaching, or in other facets of faculty development.

## Research

There is none to speak of at SMUM.

## Academic Interactions Between Grand Cayman and Maine Campuses

Course content, format, suggested modifications, and evaluation of student performance are discussed periodically by telephone and occasionally via videoconferences between the faculties and administrators at Grand Cayman and Windham. There is no plan to standardize or directly coordinate course content, format, sequence of presentations, or examination content.

The content and format of interim examinations are developed locally. There is a plan to use the USMLE SHELF examinations of PART 1 in the near future both for practice and as final course examinations on both campuses.

22

At present, there is very little formal feedback from more advanced students or clinical clerkship directors about the adequacy of the SMUM students' preparation for the clerkships.

## Interactions Between SMUM and SMUSOM on Grand Cayman

Academics: Beyond general agreement on curriculum content, academic interactions between the two sites are sporadic and few - mostly via telephone, videoconference, and e-mail. Faculty members meet to discuss topics of mutual interest and concern at the time of graduation. Few of the faculty at either campus have ever visited the other. Even at SMUM, it seems as though few of the (small) faculty have met each other.

Administrative: Policies and procedures for admission, curriculum content, evaluation of student performance, grading, student discipline, acquisition, promotion or termination of faculty, and all other policy matters are determined by the central administration at SMUSOM on Grand Cayman and at the Florida Office. Interpretation of these determinations and actual implementation are carried out at SMUM.

## Summary and Conclusions: SMUM

For this section of the overall review of SMUSOM the site visiting team finds as follows:

Advantages of the SMUM program:
--Joint MD/MHSA degree program - innovative and appropriate
--Enthusiastic faculty apparently closely student-oriented and supportive
--Access to a superb medical center (MMC) and other appropriate clinical sites
--Excellent library facilities at MMC and SJCOM and some resources at SMUM with computer-based access to all major medical and basic science data bases
--Location on U.S. mainland

Limitations:
--Students not able to participate in nor observe any ongoing research activities
--Basic science faculty primarily composed of retired clinicians
--No wet laboratory components to the basic science courses
--Minimal, almost insignificant exposure to hands-on clinical laboratory techniques

--Almost no interactions with other medical students beyond their own cohort nor with SJCOM students and only occasionally with other MHSA students
--Essentially no feedback from former SMUM students nor from clerkship preceptors

Throughout, the physicians and others whom the team met made laudatory and complimentary comments about the SMUM students and about their interactions with the faculty and administrators of SMUM. Further, the physicians, PAs and librarians appear uniformly enthusiastic about their interactions with the students and with their own opportunities in the teaching roles - whether elderly, old and retired, or young in active practice. (The team was informed that the interviewees were specifically selected to meet with the team and represent the best examples of their kind - quite believable and to be expected.).

ACKNOWLEDGMENT: The site visiting team received a cordial reception from administrators, faculty, staff and students at SMUM, and from SJCOM administrators.  On arrival, we were provided with a voluminous set of documents concerning SMUSOM, SMUM, and SJCOM.  The schedule and agenda for the site visit were clear and appropriately comprehensive considering the limited time available. The team offer their thanks especially to Dr. James Pringle, Associate Dean of Basic Sciences SMUM, Dr. Jerry Thornton, Vice President and Chief Operating Officer SMUSOM, and Mr. Paul Adams, Director of Clinical Site Development, for the time and effort on this project.

## Part 3. Site Visits to Chicago Area Hospitals Which Offer Clinical Clerkships to SMUSOM Students

### Introduction

Three members of the Saba team (Ms. Hadnot, Ms. Scuri and Dr. Pops) proceeded to Chicago, Illinois on May 23 and spent half-day visits May 24-25 at each of four hospitals which have contracted for clinical clerkships both required and elective for SMUSOM students.  Brief descriptions and evaluations are provided for these hospitals.

### Provena St. Joseph Hospital – Elgin, Illinois

Located approximately 50 miles west of Chicago in the town of Elgin, this hospital began offering clerkships to Caribbean medical school students four years ago. Currently, students attend from SMUSOM, St. Eustatia, Spartan Health Sciences, and Loyola.  There are 16 slots in various specialties in 12 week blocks in the primary care

specialties The students we met with were all (3) SMUSOM students. The hospital does not have any ACGME-accredited residency programs.

Supervision of the academic programs is provided by a semi-retired cardiovascular surgeon, Dr. Cavallo, who meets regularly with the students for didactic exercises. The written affiliation agreement was with Dr. Cavallo and not with the hospital. Case presentations and formulation are evaluated by Dr. Cavallo and physicians serving as preceptors. The only residents are those who rotate on the gynecology service from Loyola University. The Loyola students only began rotations at this hospital in January 2004. Dr. Cavallo indicated that that the SMUSOM students were not as motivated nor as good as those from a different Caribbean medical school and that SMUSOM students need a stronger physical diagnosis/ICM course.

We interviewed preceptors in Family Medicine, Obstetrics and Gynecology, Psychiatry and Pediatrics. The majority of each student's time is spent accompanying individual preceptors on activities in their private practice both in the office and hospital rounds. The most popular and seemingly best-organized rotation is the 6 week psychiatry clerkship which takes advantage of a 30 bed in-patient ward plus a hospital out-patient day program. The teaching is well organized and the students see a wide variety of cases.

The other services appeared less well organized and seem to offer instruction mostly "on the fly" as a student spends his or her day tagging along with a preceptor. One of the students on a gastroenterology elective told us that the only activity he had participated in during his clerkship was observing various G.I. endoscopic procedures. We spoke with three SMUSOM students who praised their experience. They, however had not been able to pass the USMLE Step I. Their overall fund of clinical knowledge was questionable. The team's overall impression was that the program was not an integrated whole, but rather was very fragmented and the quality of instruction was very uneven. The team also noted that there was no mechanism by which the hospital could obtain feedback from SMUSOM as to how the students perform on USMLE or in residency training. The team concluded that, except for the psychiatry clerkship, SMUSOM should consider dropping this hospital as a training site since it does not otherwise provide appropriate well-organized instruction for students in clerkships.

The constraints are a mostly middle class insured patient population which provides limited opportunities for "hands on" experiences for students. It was the least impressive teaching hospital of the four visited.

### St. Anthony's, Michael Reese and Jackson Park

These three hospitals are within the city limits of Chicago. All offer various clerkships for SMUSOM as well as other Caribbean Island schools. The team conducted interviews with faculty preceptors, department chairs and SMUSOM students. They can be described as a group because of a large number of similarities.

St. Anthony's is not a major affiliate teaching hospital but is accredited for obstetrics and gynecology. It has 8 residencies in internal medicine and 5 in obstetrics and gynecology. The team interviewed one student from SMUSOM and 4 students from Saba.

Michael Reese is a major affiliate teaching hospital for the University of Illinois/Chicago School of Medicine. Students come from three Caribbean schools and second year students and residents come from the University of Illinois. Starting in Fall of 2003, all students are required to have passed Step 1 of the USMLE before starting any core rotation. SMUSOM has had a written contract of affiliation with Michael Reese since January 1, 2002. The team interviewed 3 students from SMUSOM and 2 students from Saba.

Jackson Park has an ACGME-accredited family practice residency. This hospital has a large contingent of students: 10 students each from Saba and SMUSOM, 48 students from Ross, 2 to 5 students from University of Chicago medical school, and 5 to 8 students from Grace University. The hospital has been teaching Caribbean students since 1988. It has 15 residents. All students are required to have passed Step 1 of the USMLE before starting any core rotation. All 6 students interviewed at Jackson Park were from SMUSOM. Most were completing all their core rotations at this hospital.

The leadership and the various course chairs at the three Chicago hospitals were generally full time hospital based physicians, mostly in primary care specialties Both required clerkships and elective are offered in a variety of medical subspecialties such as cardiology and gastroenterology.

An adequate balance of didactic learning via seminars and conferences and practical clinical experiences with students responsible for in-patient and out-patient work-ups presentations, formulations and follow-ups constitutes the curriculum at each hospital. SMUSOM students at these hospitals mix with some students from two Chicago area U.S. schools, Chicago Medical and U. of Illinois. Exams are conducted by the school on a regular basis and rely on "shelf" exams at the USMLE. Evaluations as well as the exams are sent to SMUSOM.

Admittedly, the survey team was only able to get a "snapshot" look at SMUSOM's clinical programs. However, it was evident from the team's conversations with staff and students that SMUSOM has no coordinated method of counseling students regarding their clinical rotations and has no real criteria for choosing rotations but rather tries to accommodate individual students' requests. SMUSOM allows students to complete electives before finishing their core rotations.

## Summary

On review of the available documentation and in the course of the site visit to SMUCI the team identified both positive and problematic aspects of the SMUCI program, as follows:

### Positive Aspects--SMUCI:

- A clearly articulated and apparently effective *recruitment and admissions process.*
- A comprehensive *financial aid program.*
- The *students' very favorable comments about the school and the educational program.* This was particularly true of transfer students from other Caribbean schools.
- Instruction in the *basic sciences* incorporating continuing availability of lectures on laptops, and teaching aids.
- An enthusiastic *and accessible faculty* - much appreciated by the students.
- The highly capable, innovative and enthusiastically engaged *Chair of Preclinical Studies, Dr. Gordon Green.*
- The *librarian overseeing the library* with ready electronic access to many journals and data bases and an innovative approach to library resources.
- The *physical plant* - with wireless access throughout, electronic communication facilities between students and faculty and among students, video conferencing capabilities, universal internet access, well-equipped classrooms and some laboratories.
- The modern, clean and well-appointed *Residence Hall* - and attendant facilities.
- The complete range of *student support and development facilities and services.*
- The budding *learning enhancement program.*
- The two modern and very well equipped *hospitals* on Grand Cayman - ideal sites for the Introduction to Clinical Medicine and Patient Care courses.
- Satisfactory and mutually supportive *relations and interactions with local government.*

**Problem Areas Affecting Entire Program:**

- SMUSOM is still in its infancy - *just two years at the present location* and essentially completely newly re-organized and administered as compared with its prior location and staff.
- *Only 2 of 263 graduates are known to have completed residency training. The current situation of 36 graduates is "unknown."*
- An apparently high attrition rate with 19% of the first year class in academic difficulties may reflect an *insufficiently critical discriminatory admissions policy and practices.*
- Most of the *faculty have been on site for less than two years with several there for but a few weeks or months prior to the site visit.*
- An *evolving, still unproven preclinical curriculum* in consequence of the above.
- Limited *communication with the basic science program in Maine* as regards course content, modifications, and examinations, and the lack of formal processes for such communications.
- *Inconsistent and seemingly sketchy review and evaluation of core clinical sites in 11 States, the District of Columbia, and overseas; i.e., several clerkships at a particular site reviewed in one day and by faculty from clinical disciplines other than those being evaluated.*
- Selection and utilization of some *core clerkship sites that do not require passage of USMLE Part 1 prior to commencing a clerkship.* (A large number of students have not taken and others do not plan to take the USMLE).
- Methods of selection of *sites for clinical electives on an ad hoc basis* - e.g., in accord with a student's particular wish or personal recommendation without consistent instructional content and oversight by SMUSOM. The team strongly recommends that SMUSOM reform and strengthen both its policies and its practices regarding clinical clerkship site selection, monitoring, inspections, and periodic reviews of sites.
- This *somewhat haphazard selection of sites for clinical electives has led to the inclusion of some non-teaching hospitals for electives.*
- *Clerkship site selection is a student's responsibility on the basis of very limited information* - no organized system of feedback to 5th semester students from upper class students or graduates and no organized system of feedback to the school.
- No organized *system of feedback from graduates about perceived effectiveness or adequacy* of their medical education. Again, this is an area where SMUSOM would benefit from modifying and strengthening its policies and its practices to obtain more information from graduates and clinical clerks about the adequacy of their preparation, and experiences and to formalize a process whereby that information will be used to counsel students regarding their selection of clinical sites.

- *Tracking of graduates is grossly deficient* - a problem area in a new institution desiring recognition for the quality of its programs.
- The essentially complete *absence of research* activities both for continuing growth in their disciplines by faculty and lack of student participation in such endeavors.

## CONCLUSION AND RECOMMENDATION

SMUSOM is apparently off to a good start and gives promise of a potentially bright future.  At present, it is still in early phases of development with a very limited track record and not ready for recognition by the Division. A repeat evaluation should be undertaken after remediation of the problem areas and more evidence of satisfactory performance is available.

Based upon its assessment of the quality of the institution as a whole and the quality of the institution's educational program, the survey team is unanimous in recommending, that the State of California, Medical Board of California, Division of Licensing at this time deny recognition of St. Matthew's University School of Medicine as not providing a resident course of instruction leading to an M.D. degree that is equivalent to that required by Sections 2089 and 2089.5 of the Business and Professions Code together with Title 16, Cal. Code Regs. Sections 1314.1.

### Addenda to Report on Site Visit
### St. Matthew's University School of Medicine

### SMUSOM Veterinary Medicine School

At the time of the site visit to SMU Grand Cayman, the visitors were not informed of the apparently quite far advanced plans for the almost imminent opening of a veterinary medicine school/program on site. This information came to the team's attention in a round about way and only well after completion of the first draft of the team's report on its visit.  The team then queried Dr. Thornton and received assurances that this development would not have any adverse impacts on the (human) medical program. Although not taken into account in the team's recommendations to the DOL at this time, it should nevertheless be clear that any future evaluation of SMUSOM by DOL will require address of potential impacts of the vet/med operation on the human medical operation, at least with regard to the administrative, logistical and academic dimensions.

## Hurricane Damage

After the site visit in June 2004, the SMU Grand Cayman campus and residence hall suffered damage from Hurricane Ivan in September 2004 and is currently operating from its Windham, Maine campus. Prior to any future request for recognition, information should be provided about the consequences of the devastation wrought by Hurricane Ivan and congeners on Grand Cayman and SMUSOM after the site visit, the remedial steps taken and the then current operational situation.

FLNB Local Form 5

## Exhibit Tag/ Cover Sheet

Party submitting: ___Plaintiff___    Ex. # __44__

Admitted: Yes  or    No  (circle one)

Debtor:___Julian Rodney Rooks Jr.___

Case No.:____21-40139-KKS_____

*Adv. No.:*_____

**Nature of Hearing/**
**Docket No:**_____

_____

Dated    ___07/22___  , 20__21__ .

By:_____,    **Deputy Clerk**

FILE No.915 08/18 05 00:17  ID:CSC  FAX 850 558 1515  PAGE 1/ 4



**Florida Department of State**
Division of Corporations
Public Access System

Electronic Filing Cover Sheet

Note: Please print this page and use it as a cover sheet. Type the fax audit number (shown below) on the top and bottom of all pages of the document.

(((H05000198420 3)))

Note: DO NOT hit the REFRESH/RELOAD button on your browser from this page. Doing so will generate another cover sheet.

To:
    Division of Corporations
    Fax Number   : (850)205-0383

From:
    Account Name  : CORPORATION SERVICE COMPANY
    Account Number : I20000000195
    Phone        : (850)521-1000
    Fax Number   : (850)558-1575

## FOREIGN PROFIT QUALIFICATION

### SMU ACQUISITION CORP.

| | |
|---|---|
| Certificate of Status | 1 |
| Certified Copy | 0 |
| Page Count | 04 |
| Estimated Charge | $78.75 |

Electronic Filing Menu        Corporate Filing        Public Access Help

RECEIVED 05 AUG 18 PM 1:18 DIVISION OF CORPORATION

FILED SECRETARY OF STATE DIVISION OF CORPORATIONS 05 AUG 18 AM 9:54

N. Culligan  AUG 1 9 2005

W 05000198420 3

## APPLICATION BY FOREIGN CORPORATION FOR AUTHORIZATION TO TRANSACT BUSINESS IN FLORIDA

*IN COMPLIANCE WITH SECTION 607.1503, FLORIDA STATUTES, THE FOLLOWING IS SUBMITTED TO REGISTER A FOREIGN CORPORATION TO TRANSACT BUSINESS IN THE STATE OF FLORIDA.*

1. SMU Acquisition Corp.

(Enter name of corporation; must include "INCORPORATED," "COMPANY," "CORPORATION," "Inc.," "Co.," "Corp," "Inc," "Co," or "Corp.")

(If name unavailable in Florida, enter alternate corporate name adopted for the purpose of transacting business in Florida)

2. Delaware                                   3. 20-3322769
   (State or country under the law of which it is incorporated)        (FEI number, if applicable)

4. August 15, 2005                            5. perpetual
   (Date of incorporation)                    (Duration: Year corp. will cease to exist or "perpetual")

6. _____
   (Date first transacted business in Florida, if prior to registration)
   (SEE SECTIONS 607.1501 & 607.1502, F.S., to determine penalty liability)

7. c/o Equinox Capital, Inc., 41 West Putnam Avenue, Greenwich, CT 06830
   (Principal office address)

   c/o Equinox Capital, Inc., 41 West Putnam Avenue, Greenwich, CT 06830
   (Current mailing address)

8. Business management for educational institutions
   (Purpose(s) of corporation authorized in home state or country to be carried out in state of Florida)

9. Name and street address of Florida registered agent: (P.O. Box NOT acceptable)

   Name:          Corporation Service Company

   Office Address: 1201 Hays Street

                  Tallahassee                    , Florida 32301
                     (City)                              (Zip code)

10. Registered agent's acceptance:
*Having been named as registered agent and to accept service of process for the above stated corporation at the place designated in this application, I hereby accept the appointment as registered agent and agree to act in this capacity. I further agree to comply with the provisions of all statutes relative to the proper and complete performance of my duties, and I am familiar with and accept the obligations of my position as registered agent.*

              Corporation Service Company      Cynthia L. Harris
                                               as its agent
              By: *Cynthia L. Harris*
                  (Registered agent's signature)

11. Attached is a certificate of existence duly authenticated, not more than 90 days prior to delivery of this application to the Department of State, by the Secretary of State or other official having custody of corporate records in the jurisdiction under the law of which it is incorporated.

12. Names and business addresses of officers and/or directors:

05 AUG 18 AM 9: 54

FILED
SECRETARY OF STATE
DIVISION OF CORPORATIONS

**☎05000198420☂**

## A. DIRECTORS

Chairman: Steven C. Rodger

Address: 623 Lake Avenue

Greenwich, CT 06830

Vice Chairman:

Address:

Director: John I. Wechsler

Address: 159 Bedford Road

Greenwich, CT 06831

Director:

Address:

## B. OFFICERS

President: Steven C. Rodger

Address: 623 Lake Avenue, Greenwich, CT 06830

Vice President: none

Address:

Secretary: John I. Wechsler

Address: 159 Bedford Road, Greenwich, CT 06831

Treasurer: Steven C. Rodger

Address: 623 Lake Avenue, Greenwich, CT 06830

NOTE: If necessary, you may attach an addendum to the application listing additional officers and/or directors.

13. _____
　　　　(Signature of Director or Officer listed in number 12 of the application)

14. Steven C. Rodger, President
　　　　(Typed or printed name and capacity of person signing application)

FILED 05 AUG 18 AM 9:54 SECRETARY OF STATE DIVISION OF CORPORATIONS

**☎05000198420☂**



PAGE  1

### The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY "SMU ACQUISITION CORP." IS DULY
INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN
GOOD STANDING AND HAS A LEGAL CORPORATE EXISTENCE SO FAR AS THE
RECORDS OF THIS OFFICE SHOW, AS OF THE EIGHTEENTH DAY OF AUGUST,
A.D. 2005.

AND I DO HEREBY FURTHER CERTIFY THAT THE FRANCHISE TAXES
HAVE NOT BEEN ASSESSED TO DATE.

AND I DO HEREBY FURTHER CERTIFY THAT THE SAID "SMU
ACQUISITION CORP." WAS INCORPORATED ON THE FIFTEENTH DAY OF
AUGUST, A.D. 2005.



Harriet Smith Windsor, Secretary of State

4015628  8300                    AUTHENTICATION: 4100377

050682049                        DATE: 08-18-05

₩05000198⁶20 ₹

FLNB Local Form 5

## Exhibit Tag/ Cover Sheet


Party submitting:  ___Plaintiff___     Ex. # __45__


**Admitted: Yes   or    No  (circle one)**


Debtor:___Julian Rodney Rooks Jr.___


Case No.:___21-40139-KKS___


*Adv. No.:*_____


**Nature of Hearing/**
**Docket No:**_____


_____


Dated     ___07/22___  , 20_21_.

By:_____ ,   **Deputy Clerk**

01/30/2006  15:08  850-245-6897                    FL DEPT OF STATE                PAGE  01/10

FILE No.251 01/30 '06 03:05  ID:CSC          FAX:850 558 1575         PAGE  1/10

## Florida Department of State
### Division of Corporations
#### Public Access System

### Electronic Filing Cover Sheet

Note: Please print this page and use it as a cover sheet. Type the fax audit number (shown below) on the top and bottom of all pages of the document.

### (((H06000025873 3)))

Note: DO NOT hit the REFRESH/RELOAD button on your browser from this page. Doing so will generate another cover sheet.

To:
    Division of Corporations
    Fax Number     : (850)205-0380

From:
    Account Name   : CORPORATION SERVICE COMPANY
    Account Number : I20000000195
    Phone          : (850)521-1000
    Fax Number     : (850)558-1575

## MERGER OR SHARE EXCHANGE

### SMU ACQUISITION CORP.

| | |
|---|---|
| Certificate of Status | 0 |
| Certified Copy | 0 |
| Page Count | 10 |
| Estimated Charge | $87.50 |

Electronic Filing Menu        Corporate Filing Menu             Help

## CERTIFICATE OF MERGER FOR FLORIDA LIMITED LIABILITY COMPANY

The following articles of merger are being submitted in accordance with section(s) 607.1109, 608.4382, and/or 620.203, Florida Statutes.

**FIRST:** The exact name, street address of its principal office, jurisdiction, and entity type for each **merging** party are as follows:

| Name and Street Address | Jurisdiction | Entity Type |
|---|---|---|
| 1. St. Matthew's Cayman International, Ltd. Co. | Florida | LLC |
| 1005 W. College Blvd., Suite A | | |
| Niceville, FL 32578 | | |

Florida Document/Registration Number: L02000016724                    FEI Number: 300582852

| | | |
|---|---|---|
| 2. SMU Acquisition Corp. | Delaware | corporation |
| 1005 W. College Blvd., Suite A | | |
| Niceville, FL 32578 | | |

Florida Document/Registration Number: F05000004895                  FEI Number: 20-2322762

3. _____

_____

Florida Document/Registration Number: _____        FEI Number: _____

4. _____

_____

Florida Document/Registration Number: _____        FEI Number: _____

*(Attach additional sheet(s) if necessary)*

CR2E080(0~02)

**SECOND:** The exact name, street address of its principal office, jurisdiction, and entity type of the surviving party are as follows:

| Name and Street Address | Jurisdiction | Entity Type |
|---|---|---|
| SMY Acquisition Corp. | Delaware | corporation |
| 41 West Putnam Avenue | | |
| Greenwich, CT 06830 | | |

Florida Document/Registration Number: P05000064955                     FEI Number: 20-3332769

**THIRD:** The attached Plan of Merger meets the requirements of section(s) 607.1108, 608.438, 617.1103, and/or 620.201, Florida Statutes, and was approved by each domestic corporation, limited liability company, partnership and/or limited partnership that is a party to the merger in accordance with Chapter(s) 607, 617, 608, and/or 620, Florida Statutes.

**FOURTH:** If applicable, the attached Plan of Merger was approved by the other business entity(ies) that is/are party(ies) to the merger in accordance with the respective laws of all applicable jurisdictions.

**FIFTH:** If not incorporated, organized, or otherwise formed under the laws of the state of Florida, the surviving entity hereby appoints the Florida Secretary of State as its agent for substitute service of process pursuant to Chapter 48, Florida Statutes, in any proceeding to enforce any obligation or rights of any dissenting shareholders, partners, and/or members of each domestic corporation, partnership, limited partnership and/or limited liability company that is a party to the merger.

**SIXTH:** If not incorporated, organized, or otherwise formed under the laws of the state of Florida, the surviving entity agrees to pay the dissenting shareholders, partners, and/or members of each domestic corporation, partnership, limited partnership and/or limited liability company that is a party to the merger the amount, if any, to which they are entitled under section(s) 607.1302, 620.205, and/or 608.4384, Florida Statutes.

**SEVENTH:** If applicable, the surviving entity has obtained the written consent of each shareholder, member or person that as a result of the merger is now a general partner of the surviving entity pursuant to section(s) 607.1108(5), 608.4381(2), and/or 620.202(2), Florida Statutes.

**EIGHTH:** The merger is permitted under the respective laws of all applicable jurisdictions and is not prohibited by the agreement of any partnership or limited partnership or the regulations or articles of organization of any limited liability company that is a party to the merger.

01/30/2006  15:08    850-245-6897          FL DEPT OF STATE                    PAGE  04/10

FILE No.251 01/30 '06 03:06  ID:CSC                    FAX:850 558 1515        PAGE  4/ 10

NINTH: The merger shall become effective as of:

The date the Articles of Merger are filed with Florida Department of State

OR

_____

(Enter specific date.  NOTE:  Date cannot be prior to the date of filing.)

TENTH: The Articles of Merger comply and were executed in accordance with the laws of each party's applicable jurisdiction.

ELEVENTH: SIGNATURE(S) FOR EACH PARTY:

(Note:  Please see instructions for required signatures.)

| Name of Entity | Signature(s) | Typed or Printed Name of Individual |
|---|---|---|
| St. Matthew's Cayman International, Ltd. Co. |  | BY:  SMU Acquisition Corp., its Sole Member |
|  |  | By:  Steven C. Rodger, |
| SMU Acquisition Corp. |  | Steven C. Rodger, Co-Chairman |

(Attach additional sheet(s) if necessary)

FILE No.251 01/30 '06 03:06   ID:CSC                    FAX:850 558 1515          PAGE  5/ 10

# PLAN OF MERGER

The following plan of merger, which was adopted and approved by each party to the merger in accordance with section(s) 607.1107, 617.1103, 608.4381, and/or 620.202, is being submitted in accordance with section(s) 607.1108, 608.438, and/or 620.201, Florida Statutes.

FIRST: The exact name and jurisdiction of each merging party are as follows:

| Name | Jurisdiction |
|------|-------------|
| St. Matthew's Cayman International, Ltd. Co. | Florida |
| SMU Acquisition Corp. | Delaware |

SECOND: The exact name and jurisdiction of the surviving party are as follows:

| Name | Jurisdiction |
|------|-------------|
| SMU Acquisition Corp. | Delaware |

THIRD: The terms and conditions of the merger are as follows:

See Exhibit A attached hereto.

*(Attach additional sheet(s) if necessary)*

FILE No.251 01/30 '06 03:06   ID:CSC                    FAX:850 558 1515              PAGE  6/ 10

**FOURTH:**

A. The manner and basis of converting the interests, shares, obligations or other securities of each merged party into the interests, shares, obligations or other securities of the survivor, in whole or in part, into cash or other property are as follows:

    See Exhibit A attached hereto.

B. The manner and basis of converting rights to acquire interests, shares, obligations or other securities of each merged party into rights to acquire interests, shares, obligations or other securities of the surviving entity, in whole or in part, into cash or other property are as follows:

*(Attach additional sheet(s) if necessary)*

**FIFTH:**  If a partnership or limited partnership is the surviving entity, the name(s) and address(es) of the general partner(s) are as follows:

                                                      If General Partner is a Non-Individual,

Name(s) and Address(es) of General Partner(s)         Florida Document/Registration Number

  N/A

01/30/2006  15:08    850-245-6897            FL DEPT OF STATE                    PAGE  07/10

FILE No.251 01/30 '06 03:06   ID:CSC              FAX:850 558 1515            PAGE  7/ 10

**SIXTH:** If a limited liability company is the surviving entity the name(s) and address(es) of the manager(s)managing members are as follows:

N/A

**SEVENTH:** All statements that are required by the laws of the jurisdiction(s) under which each Non-Florida business entity that is a party to the merger is formed, organized, or incorporated are as follows:

N/A

**EIGHTH:** Other provisions, if any, relating to the merger:

N/A

*(Attach additional sheet(s) if necessary)*

01/30/2006  15:08    950-245-6897          FL DEPT OF STATE                    PAGE  08/10

FILE No.251 01/30 '06 03:07   ID:CSC                FAX:850 558 1515          PAGE  8/ 10

EXHIBIT A

TO
PLAN OF MERGER
OF

ST. MATTHEW'S CAYMAN INTERNATIONAL, LTD. CO.
(a Florida limited liability company)

WITH AND INTO

SMU ACQUISITION CORP.
(a Delaware corporation)

"THIRD: The terms and conditions of the merger are as follows:

1.   Merger.   St. Matthew's Cayman International, Ltd. Co., a Florida limited liability company (hereinafter referred to as the "Merged Company") shall merge with and into SMU Acquisition Corp., a Delaware corporation (hereinafter referred to as the "Surviving Corporation"), which shall be the surviving corporation.

2.   Terms and Conditions. On the effective date of the merger, the separate existence of the Merged Company shall cease, and the Surviving Corporation shall succeed to all the rights, privileges, immunities, and franchises, and all the property, real, personal and mixed, of the Merged Company, without the necessity for any separate transfers. The Surviving Corporation shall thereafter be responsible and liable for all liabilities and obligations of the Merged Company, and neither the rights of creditors nor any liens on the property of the Merged Company shall be impaired by the merger.

FRIV_15987_L/DFREELAND

01/30/2006   15:88 ·   850-245-6897              FL DEPT OF STATE                PAGE   89/18

FILE No.251 01/30 '06 03:07   ID:CSC              FAX:850 558 1515              PAGE   9/ 10

3.   <u>Conversion of Membership Interests</u>.   The manner and basis of converting the
membership interests of the Merged Company into shares of the Surviving Corporation are as
follows:

(a)   Each share of membership interest of the Merged Company
outstanding on the effective date of the merger shall be canceled, and no payment
shall be made with respect thereto.

(b)   Each share of common stock of the Surviving Corporation issued and
outstanding on the effective date of the merger shall remain issued and
outstanding.

4. <u>Certificate of Incorporation</u>.   The Amended and Restated Certificate of Incorporation of
the Surviving Corporation is to be further amended and changed by reason of the merger herein
certified by striking out Article FIRST thereof, relating to the name of said Surviving
Corporation, and by substituting in lieu thereof, the following new Article FIRST:

"FIRST:   The name of the Corporation is St. Matthew's University, Inc. (the
"Corporation")";

and said Amended and Restated Certificate of Incorporation as so further amended shall continue
in full force and effect until further amended and changed in the manner prescribed by the
provisions of the General Corporation Law of the State of Delaware.

5.   <u>By-laws of Surviving Corporation</u>.   The By-laws of the Surviving Corporation shall
continue to be its By-laws following the effective date of the merger.

6.   <u>Purposes of Surviving Corporation</u>.   The purposes set forth in the Amended and
Restated Certificate of Incorporation of the Surviving Corporation, as in effect on the date of the

- 2 -

PRV_799027_1/CONNIELAND

merger, shall continue in full force and effect as the corporate purposes of the Surviving Corporation following the effective date of the merger.

7. <u>Directors and Officers</u>. The directors and officers of the Surviving Corporation on the effective date of the merger shall continue as the directors and officers of the Surviving Corporation following the merger for the full and unexpired terms of their offices and until their successors have been elected and appointed.

8. <u>Effective Date of the Merger</u>.

(a) This Agreement and the merger shall become effective upon the filing of the Articles of Merger with the Florida Department of State and the Certificate of Merger with the Delaware Secretary of State.

(b) The corporate identity, existence, purposes, powers, objects, franchises, rights and immunities of the Surviving Corporation shall continue unaffected and unimpaired by the merger hereby provided for; and the corporate identity, existence, purposes, powers, objects, franchises, rights, and immunities of the Merged Company shall be continued in and merged into the Surviving Corporation and the Surviving Corporation shall be fully vested therewith."

-3-

PRV_759057_1/DAVIDLAND

FLNB Local Form 5

## Exhibit Tag/ Cover Sheet

Party submitting: ___Plaintiff___   Ex. # __46__

Admitted: Yes  or   No  (circle one)

Debtor:___Julian Rodney Rooks Jr.___

Case No.:____21-40139-KKS____

*Adv. No.:*_____

Nature of Hearing/
Docket No:_____

_____

Dated   ____07/22____ , 20__21__.

By:_____,   Deputy Clerk

Video of
Security
footage

FLNB Local Form 5

## Exhibit Tag/ Cover Sheet

Party submitting: ___Plaintiff___     Ex. # _47_

Admitted: Yes   or   No  (circle one)

Debtor:___Julian Rodney Rooks Jr.___

Case No.:___21-40139-KKS___

*Adv. No.:*_____

Nature of Hearing/
Docket No:_____

_____

Dated ___07/22___ , 20_21_.

By:_____,   Deputy Clerk

Video of
Security
Footage

FLNB Local Form 5

## Exhibit Tag/ Cover Sheet

Party submitting: ___Plaintiff___   Ex. # _48_

**Admitted: Yes  or   No  (circle one)**

Debtor:___Julian Rodney Rooks Jr.___

Case No.:____21-40139-KKS_____

*Adv. No.:*_____

**Nature of Hearing/**
**Docket No:**_____

_____

Dated       ___07/22___  , 20_21_.

By:_____,   **Deputy Clerk**

Video of
Security
Camera
Feature

FLNB Local Form 5

## Exhibit Tag/ Cover Sheet

Party submitting: ___Plaintiff___    Ex. # _49_

Admitted: Yes  or    No  (circle one)

Debtor:___ Julian Rodney Rooks Jr.___

Case No.:_____21-40139-KKS_____

*Adv. No.:*_____

Nature of Hearing/
Docket No:_____

_____

Dated        ___07/22___ , 20_21_.

By:_____ ,    Deputy Clerk

**UNITED STATES POSTAL SERVICE®**   **CUSTOMER'S RECEIPT**

KEEP THIS
RECEIPT FOR
YOUR RECORDS

PAID: SMU
ADDRESS
BOND OR
USED FOR

SEE BACK OF THIS RECEIPT
FOR IMPORTANT CLAIM
INFORMATION
**NOT NEGOTIABLE**

SERIAL NUMBER 12003957554   YEAR, MONTH, DAY 2008-03-07   POST OFFICE 949031   AMOUNT $ 200.00   CLERK 0005

---

**UNITED STATES POSTAL SERVICE®**   **CUSTOMER'S RECEIPT**

KEEP THIS
RECEIPT FOR
YOUR RECORDS

PAID: ST MATTHEWS
ADDRESS
BOND OR
USED FOR

SEE BACK OF THIS RECEIPT
FOR IMPORTANT CLAIM
INFORMATION
**NOT NEGOTIABLE**

SERIAL NUMBER 12003955124   YEAR, MONTH, DAY 2008-02-27   POST OFFICE 949031   AMOUNT $ 100.00   CLERK 0021

---

**UNITED STATES POSTAL SERVICE®**   **CUSTOMER'S RECEIPT**

KEEP THIS
RECEIPT FOR
YOUR RECORDS

PAID: ST MATTHEWS
ADDRESS
BOND OR
USED FOR   TUITION

SEE BACK OF THIS RECEIPT
FOR IMPORTANT CLAIM
INFORMATION
**NOT NEGOTIABLE**

SERIAL NUMBER 11195028627   YEAR, MONTH, DAY 2008-    POST OFFICE 949   AMOUNT $ 200.00   CLERK

FLNB Local Form 5

## Exhibit Tag/ Cover Sheet

Party submitting: __Plaintiff__          Ex. # __50__

Admitted: Yes  or    No  (circle one)

Debtor: __Julian Rodney Rooks Jr.__

Case No.: ___21-40139-KKS___

*Adv. No.*:_____

Nature of Hearing/
Docket No:_____

_____

Dated          __07/22__    , 20__21__.

By:_____,    Deputy Clerk

St. Matthew's University (Cayman) Ltd.
12124 High Tech Avenue, Suite 350
Orlando, FL 32817
USA

# Statement

| Date |
|---|
| 9/1/2008 |

To:

**Julian Rooks**
**3648 Dartford Lane**
**Tallahassee, FL 32311**

Any questions please contact Student Accounts
at 1-800-498-9700.

## DUE UPON RECEIPT

| Date | Transaction | Amount | Balance |
|---|---|---|---|
| 12/31/2004 | Balance forward | | 0.00 |
| 11/04/2005 | PMT #3691. Tuition | -1,000.00 | -1,000.00 |
| 01/04/2006 | PMT #1105. Tuition | -400.00 | -1,400.00 |
| 01/04/2006 | PMT #1107. Tuition | -400.00 | -1,800.00 |
| 01/06/2006 | PMT #1108. Tuition | -400.00 | -2,200.00 |
| 01/30/2006 | PMT #1115. | -400.00 | -2,600.00 |
| 05/01/2006 | INV #212. | 21,199.92 | 18,599.92 |
| | --- Adj In & Out $21,199.92 | | |
| 05/01/2006 | CREDMEM #33826. | -21,199.92 | -2,600.00 |
| | --- Adj In & Out S-21,199.92 | | |
| 05/01/2006 | INV #33827. | 2,600.00 | 0.00 |
| | --- Bad Debt $2,600.00 | | |
| 03/03/2008 | PMT #12003344124. Tuition | -100.00 | -100.00 |
| 03/11/2008 | PMT #12003357554. Payment of Bad Debt | -200.00 | -300.00 |
| 03/14/2008 | DEP #12003357554. Re-Payment Bad Debt | 0.00 | -300.00 |
| 03/14/2008 | INV #58691. | 300.00 | 0.00 |
| | Write Off Bad Debt-Paid | | |
| | --- Bad Debt $300.00 | | |
| 05/02/2008 | INV #60296. | 200.00 | 200.00 |
| | Write Off Bad Debt- | | |
| | --- Bad Debt $200.00 | | |
| 05/02/2008 | PMT #11195028527. Tuition Fee-Bad Debt pymt | -200.00 | 0.00 |

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
|---|---|---|---|---|---|
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |

Please Make Check Payable to St Matthews University. Mailing address listed above.

To pay by Master Card or Visa log on to www.smuonline.com. Click on "Students", "Financial" then "Click here to Access SMUOnline
Securely....".  If your invoice is not listed, enter it at the bottom. You will need the invoice numbers and the amount listed.
Click "Add to List", then "Add to Total", then "Pay Total" and follow the instructions.

Health Insurance Waivers can be downloaded at http://www.stmatthews.edu/forms-library.shtml.

FLNB Local Form 5

## Exhibit Tag/ Cover Sheet

Party submitting: ___Plaintiff___   Ex. # _51_

Admitted: Yes  or   No  (circle one)

Debtor:___Julian Rodney Rooks Jr.___

Case No.:_____21-40139-KKS_____

*Adv. No.:*_____

Nature of Hearing/
Docket No:_____

_____

Dated        __07/22__   , 20_21_.

By:_____,   Deputy Clerk



St. Matthew's University
School of Medicine and Veterinary Medicine
Grand Cayman, British West Indies
*"Improving Life by Degrees"*

**Gary McCutcheon, Ed.D.**
Dean of Clinical Students
Executive Director of Clinical Operations
Direct: 407-488-1712
gmccutcheon@stmatthews.edu

U.S. Administrative Offices
12124 High Tech Avenue
Suite 350
Orlando, Florida 32817
Telephone: 800-498-9700
Fax: 800-565-7177
www.stmatthews.edu

① CLEAR DEBT

② BACKGROUND
           CHECK

③ 4 SHELF EXAMS
   SAT / PER
   TIMES MONTHS

④ PERLA AND CARD SOFTS

⑤ ER TRAUMA
     ELECTIVE
       ELECTIVE

⑥ STEP I QUALIFIER
   NBME CUMULATIVE
       MY PTR PASS
         BY
   RESULT ON LINE
   PASS = 72

FLNB Local Form 5

## Exhibit Tag/ Cover Sheet

Party submitting: __Plaintiff__      Ex. # 52

Admitted: Yes   or   No   (circle one)

Debtor:___Julian Rodney Rooks Jr.___

Case No.:_____21-40139-KKS_____

*Adv. No.*:_____

Nature of Hearing/
Docket No:_____

_____

Dated        __07/22__  , 20_21_.

By:_____,   Deputy Clerk

# January 22, 2009

----- Original Message -----
From: "Gunther Prien" <ucsf4@yahoo.com>
To: registrar@stmatthews.edu
Sent: Thursday, January 22, 2009 4:19:41 AM GMT -05:00 US/Canada Eastern
Subject: To Jennifer from Julian Rodney Rooks

Jennifer, Please acknowledge that you did recieve a total of 12 documents in 2 emails. Earlier I said 11, but there should be 12. Thank you, Rodney

----- Forwarded Message -----
From: Jennifer Applequist <japplequist@stmatthews.edu>
To: Gunther Prien <ucsf4@yahoo.com>
Sent: Thu, January 22, 2009 5:37:27 AM
Subject: Re: To Jennifer from Julian Rodney Rooks

Julian,

I have received your emails and will review your file to provide you with a list of missing items later today or tomorrow.

Your patience is appreciated.

Thank you,
Jennifer
---
Jennifer Applequist
Registrar
St. Matthew's University
12124 High Tech Avenue, Suite 350
Orlando, FL 32817
407 488-1700/800-498-9700 x1012
407 488-1743/800-566-7177 Fax
registrar@stmatthews.edu

# January 27, 2009

1 File (33KB)



2009012...

—— Forwarded Message ——
From: Jennifer Applequist <japplequist@stmatthews.edu>
To: Gunther Prien <ucsf4@yahoo.com>
Sent: Tue, January 27, 2009 8:19:21 AM
Subject: Requested Information

Julian,

Please find attached a letter explaining the reason for your withdrawal from St. Matthew's University.

Thank you,
Jennifer
—
Jennifer Applequist
Registrar
St. Matthew's University
12124 High Tech Avenue, Suite 350
Orlando, FL 32817
407 488-1700/800-466-9700 x1012
407 488-1743/800-565-7177 Fax
registrar@stmatthews.edu

—— Original Message ——
From: "Gunther Prien" <ucsf4@yahoo.com>
To: "Jennifer Applequist" <japplequist@stmatthews.edu>
Sent: Tuesday, January 27, 2009 3:18:01 PM GMT -05:00 US/Canada Eastern
Subject: Re: Requested Information

Dear Ms. Applequist,

Thank you for your efforts to determine the remaining information needed by SMU to complete my file. As sated in your letter, there are 5 items outstanding. 1-4 are tests and #5 is a Trauma Elective Evaluation from 05/06/02 to 05/31/02. I have included, as attachments, my Trauma Elective Evaluation from the above dates. This should complete request #5 leaving only the 4 exams.
Please send the information as to where, when and under what conditions the 4 tests must be taken and I will arrange for travel from California in order to complete my file.

Thank you for your efforts.
Sincerely,
Julian Rodney Rooks

—— On Tue, 1/27/09, Jennifer Applequist <japplequist@stmatthews.edu> wrote:

From: Jennifer Applequist <japplequist@stmatthews.edu>
Subject: Requested Information
To: "Gunther Prien" <ucsf4@yahoo.com>
Date: Tuesday, January 27, 2009, 4:19 PM

Julian,

Please find attached a letter explaining the reason for your withdrawal from St. Matthew's University.

Thank you,
Jennifer
—
Jennifer Applequist
Registrar
St. Matthew's University
12124 High Tech Avenue, Suite 350
Orlando, FL 32817
407 488-1700/800-498-9700 x1012
407 488-1743/800-565-7177 Fax
registrar@stmatthews.edu

# St. Matthew's University

January 27, 2009

Dear Mr. Rooks,

In reviewing your file, we have found that you are missing several items which prevent you from graduating from St. Matthew's University. These items are:

1. OB/Gyn Shelf Exam
2. Pediatrics Shelf Exam
3. Psychiatry Shelf Exam
4. Internal Medicine Shelf Exam
5. Trauma Elective Evaluation, rotation completed 5/06/02 – 5/31/02

Unfortunately as these items were not received and/or completed, you were placed in Withdrawn status on April 24, 2003.

Thank you.

Jennifer Applequist
University Registrar

12124 High Tech Avenue, Suite 350; Orlando, FL 32817 • www.stmatthews.edu
1.407.977.8100 • 1.800.498.9700 • Fax 407.977.9269

# February 5, 2009

----- Forwarded Message ----
**From:** Jennifer Applequist <japplequist@stmatthews.edu>
**To:** Gunther Prien <ucsf4@yahoo.com>
**Sent:** Thu, February 5, 2009 5:55:28 AM
**Subject:** Re: Requested Information

Julian,

Thank you for your patience while I researched your question.  Unfortunately you cannot take the exams unless you are enrolled with SMU. If you wish to return to SMU to complete the requirements to graduate you will need to apply for readmission through the Admissions office. If accepted, your first academic step will be to take a qualifying exam that you will need to pass in order for SMU to allow you to take Step 1.

You will also need to develop a plan to address your outstanding financial balance as you will not be able to enroll as a student until that is cleared.

The Admissions office can be reached at 800-498-9700 or admissions@stmatthews.edu.

Thank you,
Jennifer
---
Jennifer Applequist
Registrar
St. Matthew's University
12124 High Tech Avenue, Suite 350
Orlando, FL 32817
407 488-1700/800-498-9700 x1012
407 488-1743/800-565-7177 Fax
registrar@stmatthews.edu


----- Forwarded Message ----
**From:** Jennifer Applequist <japplequist@stmatthews.edu>
**To:** ucsf4@yahoo.com
**Sent:** Thu, February 5, 2009 9:03:35 AM
**Subject:** Re: Requested Information

Julian,

Once you apply and if you are accepted, the Admissions office will notify you of the requirements you will need to complete.

Thank you,
Jennifer
---
Jennifer Applequist
Registrar
St. Matthew's University
12124 High Tech Avenue, Suite 350
Orlando, FL 32817
407 488-1700/800-498-9700 x1012
407 488-1743/800-565-7177 Fax
registrar@stmatthews.edu

# February 5, 2009

----- Original Message -----
From: "Gunther Prien" <ucsf4@yahoo.com>
To: "Jennifer Applequist" <japplequist@stmatthews.edu>
Sent: Thursday, February 5, 2009 10:47:45 AM GMT -05:00 US/Canada Eastern
Subject: Re: Requested Information

Dear Jennifer,
Thank you for your response,
If I understand correctly I must pay off my balance and reapply to SMU in order

to complete requirements for graduation. Can you please:
1. list exactly what the requirements for graduation would be?
2. will SMU readmitt me if I pay off my balance?
I would like to know what to expect as I form a plan.
Thank you,
Sincerely,
Julian Rooks

----- Original Message -----
From: "Gunther Prien" <ucsf4@yahoo.com>
To: "Jennifer Applequist" <japplequist@stmatthews.edu>
Sent: Thursday, February 5, 2009 12:05:51 PM GMT -05:00 US/Canada Eastern
Subject: Re: Requested Information

Hello Jennifer,
Thank you for your response. I would be greatfull if you could list the portion of the academic curriculum SMU
considers to be outstanding, i.e. what would be required for my
graduation (other than satisfying my balance). Thank you, Julian

--- On Thu, 2/5/09, Jennifer Applequist <japplequist@stmatthews.edu>
wrote:

From: Jennifer Applequist <japplequist@stmatthews.edu>
Subject: Re: Requested Information
To: "Gunther Prien" <ucsf4@yahoo.com>
Date: Thursday, February 5, 2009, 1:55 PM

Julian,

Thank you for your patience while I researched your question.  Unfortunately
you cannot take the exams unless you are enrolled with SMU. If you wish to
return to SMU to complete the requirements to graduate you will need to apply
for readmission through the Admissions office. If accepted, your first academic
step will be to take a qualifying exam that you will need to pass in order for

# February 5, 2009

--- On Thu, 2/5/09, Jennifer Applequist <japplequist@stmatthews.edu> wrote:

From: Jennifer Applequist <japplequist@stmatthews.edu>
Subject: Re: Requested Information
To: "Gunther Prien" <ucsf4@yahoo.com>
Date: Thursday, February 5, 2009, 1:55 PM

Julian,

Thank you for your patience while I researched your question.  Unfortunately you cannot take the exams unless you are enrolled with SMU.  If you wish to return to SMU to complete the requirements to graduate you will need to apply for readmission through the Admissions office.  If accepted, your first academic step will be to take a qualifying exam that you will need to pass in order for SMU to allow you to take Step 1.

You will also need to develop a plan to address your outstanding financial balance as you will not be able to enroll as a student until that is cleared.

The Admissions office can be reached at  80... or admissions@stmatthews.edu.

Thank you,
Jennifer
---
Jennifer Applequist
Registrar
St. Matthew's University
12124 High Tech Avenue, Suite 350
Orlando, FL 32817
407 488-1700/800-498-9700 x1012
407 488-1743/800-565-7177 Fax
registrar@stmatthews.edu

--- On Thu, 2/5/09, Jennifer Applequist <japplequist@stmatthews.edu> wrote:

From: Jennifer Applequist <japplequist@stmatthews.edu>
Subject: Re: Requested Information
To: ucsf4@yahoo.com
Date: Thursday, February 5, 2009, 4:43 PM

Julian,

It will be up the Admissions department to decide if you meet the requirements for reacceptance to SMU. It is not guaranteed.

The current academic curriculum is listed on our website at
http://www.stmatthews.edu/med_curriculum.shtml.

Thank you,
Jennifer
---
Jennifer Applequist
Registrar
St. Matthew's University
12124 High Tech Avenue, Suite 350
Orlando, FL 32817
407 488-1700/800-498-9700 x1012
407 488-1743/800-565-7177 Fax
registrar@stmatthews.edu

FLNB Local Form 5

## Exhibit Tag/ Cover Sheet

Party submitting: _Plaintiff_____    Ex. # _53_

Admitted: Yes  or   No  (circle one)

Debtor: ___Julian Rodney Rooks Jr.___

Case No.: _____21-40139-KKS_____

*Adv. No.*:_____

Nature of Hearing/
Docket No:_____

_____

Dated _____07/22_____ , 20_21_.

By:_____, Deputy Clerk



**Macias, Wendy**

From:
Sent: Monday, June 22, 2009 1:11 PM
To: negreg09
Subject: Proposed Negotied Rulemaking on Foreign Schools
Attachments: Neg Reg Public Statement 6 22 2009.pdf

June 22, 2009

Dear Ms. Macias:

Attached please find the comments of R3 Education, Inc. in response to the U.S. Department of Education's Federal Register announcement that it intends to establish a negotiated rulemaking committee to prepare proposed regulations governing foreign schools, including the implementation of the changes made to the Higher Education Act by the Higher Education Opportunity Act (HEOA). *See* 74 Fed. Reg. 24728 (May 26, 2009).

R3 Education Inc. owns three foreign medical schools. As such, we have a unique perspective on the implementation of the HEOA's changes to the Title IV eligibility provisions for foreign medical schools. We appreciate the opportunity to provide this perspective through the attached comments, and we would be happy to provide any further information about our experiences that the Department might find helpful.

We look for to working with the Department to develop any proposed regulations in this area. If you have any questions, please do not hesitate to contact me. I may be reached at

Regards,

R3 Education Inc.

1

Implementation of the Higher Education Opportunity Act
Written Comments of ▮▮▮▮▮▮▮▮▮▮▮▮

R3 Education, Inc.

June 22, 2009

R3 Education, Inc. writes to provide its thoughts on the issues before the proposed negotiated rulemaking panel relating to foreign institutions. In particular, R3 Education is interested in the expansion of Title IV participation to certain foreign graduate medical schools.

R3 Education, Inc.

R3 Education owns three foreign graduate medical schools: Saba University School of Medicine located in the Netherlands-Antilles, the Medical University of the Americas located in Nevis, West Indies, and St. Matthew's University School of Medicine located in Grand Cayman, British West Indies. All three medical schools are accredited by the Accreditation Commission on Colleges of Medicine, an accrediting body recognized by the Department of Education (the Department), through its National Committee on Foreign Medical Education and Accreditation (NCFMEA). The schools also have clinical programs that are approved by various states agencies, including the New York State Education Department, the Florida Commission for Independent Education, and the Medical Board of the State of California.

A substantial portion of the schools' students come from the United States. The schools' student bodies are extremely diverse, with women and minority students representing the majority of enrollments. Further, all three schools offer a curriculum that is identical to the curriculum one would find at any accredited U.S. medical school. The program of study is divided into two major segments, basic sciences and clinical rotations. The basic science

segment is five semesters in length and may be completed in 20 months. The clinical segment that follows is comprised of 72-76 weeks of rotations, with 42-46 weeks of required or core rotations and 30 weeks of elective rotations in a variety of specialties. These rotations are completed at teaching hospitals in the United States, Canada, and the U.K. whose programs are affiliated with the schools. In our clinical rotations that take place in the United States, our students are working and studying in the same programs as students who attend American medical schools. Finally, all three schools' students are eligible to take the various components of the United States Medical Licensing Exams (USMLE), which are required for residency and medical licensure in the United States. Upon passing this exam, most of our students enter primary care fields, and many work in underserved rural and urban areas. Some of our students also have become residents in well-known teaching universities and hospitals, including the Cleveland Clinic and the Mayo Clinic.

## Higher Education Opportunity Act and Foreign Medical Schools

The Higher Education Opportunity Act (HEOA) mandated that the NCFMEA study and make recommendations on eligibility criteria for an expanded number of foreign medical schools to participate in the Title IV student loan programs. Although we are still awaiting the results of NCFMEA's study, due by August 14, 2009, we would like to offer some suggestions for the U.S. Department of Education's eventual regulations in this area.

To put our suggestions in context, it is important to first understand that the Council on Graduate Medical Education (CGME) has predicted the United States could be facing a shortage of approximately 96,000 doctors by 2020, principally in primary care fields. CGME, *Physician Workforce Policy Guidelines for the United States 2000-2020*, at xix (16th Rep. Jan. 2005):

Ashley Halsey III, *Primary Care Doctor Shortage May Undermine Reform Efforts*, WASH. POST (June 20, 2009). To remedy this shortage, CGME recognized that increasing enrollments in U.S. medical schools would be insufficient. An increase in new medical schools and in the number of international medical graduates practicing in the United States is therefore necessary to meet this growing demand for physicians. The development of regulations to implement the new foreign medical school provisions of the HEOA is critical to helping ensure that the United States is able to address its growing physician shortage.

Given this background, the expansion of Title IV programs for students attending eligible foreign medical schools is timely. It is also very important because Americans attending foreign medical schools can only obtain private student loans. As you are aware, due to the recent credit crisis, private students loans are both very difficult to receive and extremely expensive for many students.

We understand that the Department, through the upcoming rulemaking, will establish additional criteria to determine which foreign medical schools will be able to participate in the Title IV programs. We believe it is of critical importance that one set of standards apply to all foreign medical schools, regardless of whether those schools were eligible to participate before enactment of the HEOA. This will ensure consistency and further enhance transparency for students, and will ensure a simple, streamlined regulatory process for the Department to manage.

The NCFMEA's Guidelines for Requesting a Comparability Determination (Guidelines) along with its rigorous review process utilizing the Guidelines as a roadmap are the primary mechanisms the Department uses to ensure the quality of foreign medical schools participating in the Title IV programs. The Guidelines offer an excellent framework for ensuring that Title IV

- 3 -

funds are provided only to those eligible medical schools the DOE is certain are accredited by agencies with standards comparable to the accrediting standards applied to U.S. medical schools, namely the accreditation guidelines as determined by the Liaison Committee on Medical Education. The Guidelines and the NCFMEA's review process incorporate the substance and intent of the areas specified by the HEAO. Thus, we would recommend simply utilizing the Guidelines to address the new eligibility requirements of the HEOA.

To the extent that the current Guidelines are deemed to fall short in some regard, we respectfully suggest that the NCFMEA and the Department rely on the logic of the current Guidelines' structure when considering whether to add any new factors into regulation. Rather than starting from scratch, we believe that the current Guidelines should be utilized, revising them only as necessary to incorporate new criteria that are deemed necessary and advisable. For example, the current Guidelines afford a significant role to governmental and governmental approved accrediting agencies deemed comparable under the Guidelines. We believe strongly that any new regulations should continue to rely on the assessment and professional judgments of these experts. Additionally, as an example, the admissions (Section 5.1) and student achievement (Section 5.2) criteria of the current Guidelines could be applied to new foreign medical schools almost without revision in order to meet the requirements of the HEOA.

Finally, the HEOA requires that foreign medical schools maintain a pass rate for their students and graduates of at least 75 percent on Step I of the United States Medical Licensing Examination (USMLE) to be eligible to participate in the Title IV programs. I would like to note that we think this is an appropriate threshold and should be the minimum pass rate applied to all foreign medical schools that participate in Title IV programs.

- 4 -

# OVERVIEW OF MEDICAL SCHOOLS OWNED BY R3 EDUCATION, INC.

*Saba University School of Medicine* is accredited by the Accreditation Commission of Colleges of Medicine (ACCM) and approved by the New York State Education Department, the Florida Commission for Independent Education and the Medical Board of the State of California. It is recognized by the World Health Organization and listed in the latest World Directory of Medical Schools. The school enrolls approximately 600 students principally from the U.S. (42 states), as well as Canada and the U.K. The majority of Saba's student body is comprised of women and more than 60% of Saba's student population is ethnically diverse.

*Medical University of the Americas (MUA)* has a preliminary accreditation by the ACCM and is approved by the New York State Education Department. Currently, MUA has approximately 600 enrolled students of whom approximately 60% are from the United States with the remaining 40% principally from Canada and the U.K. Like Saba, MUA has a very diverse student population, with women representing over 55% of its students and more than 60% representing ethnic minorities. MUA's medical program is recognized by the World Health Organization and listed in the latest World Directory of Medical Schools.

*St. Matthew's University*, founded in 1997, is approved by both the Florida Commission for Independent Education and the New York State Education Department and is accredited by the ACCM. It is also recognized by the World Health Organization and listed in the latest World Directory of Medical Schools. St. Matthew's students' most recent U.S. Medical Licensing Examination Step One pass rates were above 90 percent. Currently, St. Matthew's has approximately 1,000 enrolled students, over 800 of whom are from the U.S. As with Saba and MUA, ethnic, gender and racial minorities represent the vast majority of St. Matthew's students.

- 6 -

Conclusion

Thank you for providing R3 Education with the opportunity to offer its thoughts on the eligibility criteria for new foreign medical schools to participate in Title IV. Given the shortage of doctors in the United States, particularly in the primary care fields, we believe it is important not to foreclose avenues for producing quality medical professionals, such as foreign medical schools. At the same time, it is critical to ensure that foreign medical schools participating in Title IV apply high academic standards. We are confident that Saba, MUA and St. Matthew's apply the highest standards. We further believe that, using the current Guidelines as a guide, the Department can draft regulations that will guarantee that all foreign medical schools participating in Title IV are subject to high educational standards. We look forward to working with the Department as it begins to develop the new eligibility criteria for foreign medical schools required by the HEOA.

FLNB Local Form 5

## Exhibit Tag/ Cover Sheet

Party submitting: __Plaintiff__        Ex. # _54_

Admitted: Yes  or   No  (circle one)

Debtor:___Julian Rodney Rooks Jr.___

Case No.:_____21-40139-KKS_____

*Adv. No.:*_____

Nature of Hearing/
Docket No:_____

_____

Dated        ___07/22___  , 20_21_.

By:_____,   **Deputy Clerk**

TO VERIFY: TRANSLUCENT GLOBES MUST BE VISIBLE WHEN HELD TOWARD A LIGHT SOURCE

# St. Matthew's University School of Medicine
## P.O. Box 30992
## Regatta Office Park, Leeward Three
## Grand Cayman KY1-1204, CAYMAN ISLANDS, B.W.I.

Date Printed
2010-06-16

| Student Number | Name | Address | Enrolment Date | Degree |
|---|---|---|---|---|
| 1199938 | Julian Rodney Rooks | 2907 Alexis Lane<br>Tallahassee, FL 32308 | 1999-01-04 | |

| ECFMG Number | Gender | | Graduation Date | |
|---|---|---|---|---|
| 0-693-445-6 | Male | | | |

| Course # | Course Title | Credits | Grade |
|---|---|---|---|
| Transfer from | American University of the Caribbean | | |
| MD314 | Medical Terminology | 1 | TC |
| MD316 | Basic Life Support | 1 | TC |
| MD324 | Biostatistics | 2 | TC |
| MD143 | Molecular & Cell Biology | 4 | TC |
| MD161 | Biochemistry | 6 | TC |
| MD162 | Gross Anatomy I | 6 | TC |
| MD216 | Behavioral Psychology | 1 | TC |
| MD253 | Histology & Histophysiology | 4 | TC |
| MD262 | Gross Anatomy II | 6 | TC |
| MD271 | Physiology I | 7 | TC |
| MD323 | Endocrinology | 2 | TC |
| MD322 | Ethics | 2 | TC |
| MD391 | Neuroscience | 6 | TC |
| **Spring 1999** | | | |
| MD224 | Embryology | 3 | P |
| MD318 | Clinical Medicine III | 1 | P |
| MD325 | Immunology | 2 | P |
| MD352 | Microbiology | 4 | P |
| MD415 | Journal Club | 1 | P |
| MD434 | Clinical Medicine IV | 1 | P |
| **Summer 1999** | | | |
| MD317 | Nutrition | 1 | P |
| MD414 | Psychopathology | 1 | P |
| MD362 | Pharmacology | 6 | P |
| MMD471 | General Pathology | 7 | P |
| **Fall 1999** | | | |
| MD228 | Genetics | 2 | P |
| MD543 | Clinical Medicine V | 1 | P |
| MD572 | USMLE Review | * | P |
| MD581 | Pathology II Systemic Pathology | 8 | P |
| **Total Credits** | | 102 | |

| Clinical Name | Weeks | Grade |
|---|---|---|
| **Spring 2001** | | |
| Surgery | 12 | HP |
| **Fall 2001** | | |
| Internal Medicine Elective | 8 | H |
| Family Medicine Elective | 6 | H |
| **Spring 2002** | | |
| Vascular surgery | 2 | HP |
| Nephrology Elective | 6 | HP |
| Emergency Medicine Elective | 4 | HP |
| **Summer 2002** | | |
| Infectious Disease | 4 | HP |
| Total Weeks | 44 | |
| Overall GPA | | 2.66 |

AN OFFICIAL SIGNATURE IS WHITE WITH A PURPLE BACKGROUND          REJECT DOCUMENT IF SIGNATURE BELOW IS ALTERED

Jennifer Applequist, M.Ed., Registrar

GRADING LEGEND IS PRINTED ON REVERSE

**St. Matthew's University**

12124 High Tech Avenue, Suite 350, Orlando, FL 32817

*Official Transcript*

Julian Rooks
3648 Dartford Lane
Tallahassee, FL 32311

FLNB Local Form 5

## Exhibit Tag/ Cover Sheet

Party submitting: __Plaintiff__   Ex. # __55__

Admitted: Yes  or   No  (circle one)

Debtor:___Julian Rodney Rooks Jr.___

Case No.:_____21-40139-KKS_____

*Adv. No.:*_____

Nature of Hearing/
Docket No:_____

_____

Dated _____07/22____ , 20_21_ .

By:_____, Deputy Clerk

Payment Address:
    General Revenue Corporation
    PO Box 495999
    Cincinnati OH 45249-5999
Correspondence Address:
    General Revenue Corp
    325 Daniel Zenker Dr
    Horseheads NY 14845-1008



**GENERAL REVENUE CORPORATION**

(877) 525-7344 ● pay online www.generalrevenue.com
STREET ADDRESS: 325 DANIEL ZENKER DR ◆ HORSEHEADS NY 14845

JAN 07 2014

10963224-47
Julian R Rooks Jr
3648 Dartford Ln
Tallahassee FL 32311-7773

> GRC Account #: 10963224
> Client: Finance Authority of Maine
> Total Current Balance: $60,670.44

### CONSOLIDATION MAY BE THE ANSWER FOR YOUR DEFAULTED EDUCATION LOANS.

Dear Julian R Rooks Jr

Welcome to the Consolidation Loan Program offered to you through Direct Consolidation Loans and General Revenue Corporation. We are committed to offering you the best service, so if you have any questions or comments please call one of our Loan Consolidation Specialists at (877) 525-7344. You can also visit www.loanconsolidation.ed.gov for more information about this program.

Enclosed are the forms that must be completed:

- ● Promissory Note
- ● Repayment Plan Selection Form (RPS)
- ● Self Certified Letter for income verification*
- ● Alternative Documentation of Income (ADOI)*
- ● Authorization to Release Information

\* Please note that you are required to provide proof of your income (and your spouse's income if you are married) to Direct Loans in order to process a Direct Loan Consolidation application with an income Contingent repayment plan. You can accomplish this by sending in a copy of your most recent tax return (form 1040), or if that is not available, filling out and signing the Self Certified Letter for Income Verification. Alternatively, if you (or your spouse) have no taxable income you can simply check the "No Taxable income" box on the Alternative Documentation of Income form, sign it and return that form to us

It is very important that these forms are signed and completed with no errors as mistakes or additional markings will affect your approval for a consolidation. If you do make a mistake put one line through it and initial the change.

Important things to consider when filling out your application:

- ● The original signed versions of these forms must be returned for processing
- ● Use only blue or black ink when signing the documents
- ● If you are married your spouse is required to sign the Repayment Plan Selection Form and Self Certified Income Verification letter (or Alternative Documentation of Income form if no taxable income) in order for your consolidation to be completed
- ● Two (2) references that do not live with you or with each other are needed for this application. If you have not already given these to your representative over the phone please add them to the application.

A postage paid envelope has been included in your material to help expedite the return of your application to General Revenue Corporation. Please complete and return these forms to our offices within seven (7) business days from receiving it. This will ensure your application is processed in a timely manner. Please return them to the address below:

General Revenue Corporation
Attn: Consolidation Department
325 Daniel Zenker Dr
Horseheads NY 14845-1008

This is an attempt, by a debt collector, to collect a debt and any information obtained will be used for that purpose.

PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION.

FLNB Local Form 5

## Exhibit Tag/ Cover Sheet

Party submitting: ___Plaintiff___    Ex. # _56_

Admitted: Yes  or  No  (circle one)

Debtor:___Julian Rodney Rooks Jr.___

Case No.:____21-40139-KKS_____

*Adv. No.:*_____

Nature of Hearing/
Docket No:_____

_____

Dated _____07/22_____ , 20_21_.

By:_____, **Deputy Clerk**



CDFAMS06
PO Box 1022
Wixom MI 48393-1022
ADDRESS SERVICE REQUESTED



FINANCIAL ASSET MANAGEMENT SYSTEMS INC
P.O. Box 1730 • St. Charles, MO 63302-1730
877-539-3913

Hours: Mon-Thurs 8am-10pm • Friday 8am – 8pm
Select Sat 8am-1pm • Sun Closed (ALL TIMES EST)

03/12/14

16ASM        265525625

JULIAN R ROOKS JR
3648 Dartford Ln
Tallahassee FL 32311-7773

Account Number        0010310902327
Total Balance:        $139,277.44

Dear JULIAN R ROOKS JR:

CURRENT GUARANTOR: United Student Aid Funds, Inc.

| | | | |
|---|---|---|---|
| ACCOUNT NUMBER: | 0010310902327 | PRINCIPAL BALANCE: | $94,733.17 |
| INTEREST: | $17,673.37 | PENALTY CHARGES: | $.00 |
| FEES & COSTS: | $26,870.90 | TOTAL BALANCE: | $139,277.44 |

As you are aware, United Student Aid Funds, Inc. has placed your defaulted student loan account with Financial Asset Management Systems, Inc. (FAMS) for collections. After reviewing your account history, we feel that loan consolidation may be an excellent option for you to get your loan out of default. If your loans are eligible and approved, consolidating them with William D. Ford you may once again be eligible for Title IV assistance as well as, deferment and forbearance options. Additionally, because your loans will no longer be in default, you will not be at risk for tax offsets or Administrative Wage Garnishment.

FAMS is mailing the Consolidation Application for the William D. Ford loan consolidation program to you. Once completed and returned, processing may be delayed due to incomplete or missing information. To help avoid processing delays due to errors, please call our offices and we will assist you in completing these forms.

Following are instructions for completing the application:

1. The application must be completed in its entirety, and returned to FAMS within two business days of receipt
2. Complete all shaded areas of the application in either BLACK or BLUE ink ONLY
3. There may be no mistakes, cross-outs, or whiteout used on these forms
4. Section 2 of the page entitled "Repayment Plan Selection"; you may only check one box. (Checking multiple boxes will cause the application to be rejected.)
5. Date the application the date that you mail it as your signature has an expiration date
6. The application must have original signatures on it (copies will not be accepted)
7. Mail ALL forms included in this packet to the address below:

   Financial Asset Management Systems, Inc.
   PO Box 1730
   St. Charles, MO 63302-1730

Your prompt response is needed to avoid any other collection activity on your account. If you have any questions or you would like to know what other options are available to you, please contact our office.

Sincerely yours,

M. Dobratz, Director of Operations
877-539-3913

Calls to and from FAMS may be monitored and/or recorded for quality assurance.
This communication is from a debt collector. This is an attempt to collect a debt.
Any information obtained will be used for that purpose.

513CDFAMS0616ASM

**SEE REVERSE SIDE FOR IMPORTANT INFORMATION**

FLNB Local Form 5

## Exhibit Tag/ Cover Sheet

Party submitting: _Plaintiff_        Ex. # _57_

Admitted: Yes  or   No  (circle one)

Debtor:   Julian Rodney Rooks Jr.

Case No.:_____21-40139-KKS_____

*Adv. No.:*_____

Nature of Hearing/
Docket No:_____

_____

Dated         _07/22_    , 20_21_.

By:_____,   Deputy Clerk

FINANCE AUTHORITY OF MAINE
C/O SALLIE MAE POST CLAIM ASSISTANCE MC E2142
P.O. BOX 9460
WILKES-BARRE, PA 18773-9460



 JULIAN R ROOKS JR
3648 DARTFORD LN
TALLAHASSEE, FL 32311-7773

June 14, 2014
Account No: 9243322085

Dear Borrower:

On behalf of your student loan guarantor, Finance Authority of Maine, please be advised that we have requested the U.S. Department of Education to notify the U.S. Department of Treasury to suspend our previous request to offset any federal monies you would be eligible to receive, including federal tax refunds, to pay the defaulted student loan debt(s) you owe.

There may be some delay before this request for suspension of offset takes effect, because the U.S. Department of Treasury must complete a number of steps to implement this request. If you expect to receive a federal income tax refund, or are expecting federal monies, it could take at least four weeks before this suspension will be processed. Therefore, we advise you to wait at least four weeks before filing your return. Should you have questions about your tax offset, or any federal monies that may be due to you, please contact the Internal Revenue Service at 1-800-829-1040. This notice does not indicate or guarantee that any federal monies or tax offsets previously intercepted from you will be refunded, nor does it indicate that you are no longer responsible for a debt.

It is important to note, the request for interception of your federal tax refund, and any other federal monies you may be eligible to receive, will automatically be reinstated without any further notice to you if the circumstances that resulted in this suspension of offset change. For example, if you fail to make timely payments, your debt is determined to be non-dischargeable through bankruptcy, and/or a determination is made as to the collectability of your debt(s).

This notice applies to the guarantor listed within this letter only. If you received offset notification from any other guaranty agency or the Department of Education regarding any other student loan/grant debt, you must contact the agency responsible for that action.

Federal law requires us to inform you that this is an attempt to collect a debt and any information obtained will be used for this purpose.

If you have any questions about the situation that resulted in this notification, please call 1-800-331-2314, and select the appropriate option to hear the IRS status pertaining to your loan(s).



MEDTOWKY/DINAME

FLNB Local Form 5

## Exhibit Tag/ Cover Sheet

Party submitting: _Plaintiff_    Ex. # _58_

Admitted: Yes  or   No  (circle one)

Debtor: _Julian Rodney Rooks Jr._

Case No.: _21-40139-KKS_

_Adv. No.:_ _____

Nature of Hearing/
Docket No: _____

_____

Dated    _07/22_    , 20_21_.

By: _____,  Deputy Clerk

USA FUNDS, INC.
C/O SALLIE MAE POST CLAIM ASSISTANCE MC E2142
P.O. BOX 9460
WILKES-BARRE, PA 18773-9460
loansolutions.usafunds.org





JULIAN R ROOKS JR
3648 DARTFORD LN
TALLAHASSEE, FL 32311-7773

June 15, 2014
Account No: 9243322085

Dear Borrower:

On behalf of your student loan guarantor, USA Funds, we write to advise that we have requested that the federal government suspend our previous request to intercept federal payments to you, including federal tax refunds, to pay amounts you owe on defaulted student loan(s).

There may be some delay before this request for suspension of offset takes effect, because the U.S. Department of Education must notify the U.S. Department of Treasury, which must then complete a number of steps to implement this request. If you expect to receive a federal income tax refund, or are expecting federal monies, it could take at least four weeks before this suspension will be processed. Therefore, you may choose to wait at least four weeks before filing your tax return. Should you have questions about the offset of your tax refund or any federal monies that may be due to you, please contact the Internal Revenue Service at (800) 829-1040. This notice does not indicate or guarantee that any federal monies or tax offsets previously intercepted from you will be refunded, nor does it indicate that you are no longer responsible for a debt.

It is important to note that the request for interception of your federal tax refund, and any other federal monies you may be eligible to receive, will automatically be reinstated without any further notice to you if the circumstances that resulted in this suspension of offset change. For example, if you fail to make timely payments, your debt is determined to be non-dischargeable through bankruptcy, or a determination is made as to the collectability of your debt(s).

This notice applies only to the guarantor listed within this letter. If you received offset notification from any other guarantor or the Department of Education regarding any other student loan, you must contact the agency responsible for that action.

Federal law requires us to advise you that this is an attempt to collect a debt and that any information obtained will be used for this purpose.

If you have any questions about this notification, please call (800) 331-2314, and select the appropriate option to hear the IRS status pertaining to your loan. In addition, you may also visit the Web site loansolutions.usafunds.org for detailed loan information.



USDTOWKY/DINAUF

FLNB Local Form 5

## Exhibit Tag/ Cover Sheet

Party submitting: ___Plaintiff___       Ex. # _59_

Admitted: Yes   or    No   (circle one)

Debtor: ___Julian Rodney Rooks Jr.___

Case No.: ____21-40139-KKS____

*Adv. No.:*_____

Nature of Hearing/
Docket No:_____

_____

Dated        ___07/22___  , 20_21_ .

By:_____,   Deputy Clerk

# *Allied*Interstate *LLC*

12755 Hwy 55, Suite 300, Plymouth, MN 55441

Toll Free: 888-253-3108

Mon-Fri 8AM-9PM Sat 8AM-12PM

Date:        07-20-2015

Allied Interstate Account No.: 18220394

Creditor:  Navient a spin-off of Sallie Mae

School Name:  ST MATHEW'S UNIV-SCHL OF MED

Amount Owed: $20,244.53

Dear Julian R Rooks:

We are a debt collection company and our client, Navient a spin-off of Sallie Mae, has retained us to collect the debt noted above.

Our client is willing to accept payment in the amount of $3779.72, in exchange for which Navient a spin-off of Sallie Mae will release your obligation as co-signer/co-borrower and not seek any further money from you on this loan. You can take advantage of this offer if we receive your payment of $3779.72 on or before 08/16/2015. To accept, please contact our office at 888-253-3108 and we will send you a formal written agreement providing the settlement terms by mail or facsimile.

Upon timely receipt of $3779.72, Navient a spin-off of Sallie Mae will notify all three major credit reporting agencies that the co-signer/co-borrower's default status should be updated to state "co-signer/co-borrower obligation terminated."

To make payment, please call 888-253-3108, mail your payment using the coupon on the reverse side of this letter, or visit https://alliedinterstate.paymybill.us and enter user ID WF92 and password 18220394.

We reserve the right to extend this or a different settlement offer to you in the future. The total amount owed on this loan may include principal, accrued and unpaid interest, collection costs and other charges.
We appreciate your attention to this matter and look forward to hearing from you.

We are a debt collector attempting to collect a debt and any information obtained will be used for that purpose.

Sincerely,

888-253-3108
Allied Interstate LLC

PLEASE SEE REVERSE SIDE FOR OTHER IMPORTANT INFORMATION

---

Detach and return with payment

Undeliverable Mail Only:
P.O. Box 1954
Southgate, MI 48195-0954

Date:          07-20-2015
Creditor:         Navient a spin-off of Sallie Mae
ST MATHEW'S UNIV-SCHL OF MED
Account Number: 18220394
Amount Due:     $20,244.53
Amount Remitted: $_____

Payment & Correspondence Address:

Julian R Rooks
3648 Dartford Ln
Tallahassee, FL 32311-7773

Allied Interstate LLC
PO Box 361347
Columbus, OH 43236-1347

FLNB Local Form 5

## Exhibit Tag/ Cover Sheet

Party submitting: __Plaintiff__     Ex. # __60__

Admitted: Yes  or   No  (circle one)

Debtor: __Julian Rodney Rooks Jr.__

Case No.: ___21-40139-KKS___

*Adv. No.:*_____

Nature of Hearing/
Docket No:_____

_____

Dated     __07/22__   , 20__21__ .

By:_____ ,   Deputy Clerk


a CEANNATE company

PO Box 1115   13
Charlotte, NC 28201-1115



JULIAN R ROOKS JR
3648 DARTFORD LN
TALLAHASSEE, FL 32311-7773

| | |
|---|---|
| Principal | $138,429.68 |
| Interest | $34,218.71 |
| Penalty | $.00 |
| Fees and Costs | $42,022.62 |
| Total Balance | $214,671.01 |
| | |
| Account Number | 1020194499 |

Dear Julian R Rooks JR,                                                                 September 19, 2016

This notice regarding your account with the U.S. Department of Education (ED) is from FMS Investment Corp. (FMS). The current creditor U.S. Department of Education (ED) has placed your account with us for collection on 08/10/16.

FMS has made several attempts to contact you and resolve your outstanding debt; however, the balance remains unpaid.

As part of our contractual obligation, if your account remains unpaid for sixty (60) days after the placement date referenced above, FMS is required to review your account for remedies to collect delinquent Federal debts. If you are found eligible, you may be subject to one, or a combination of the following:

Your employer may be required by ED to withhold and remit up to fifteen (15) percent of your salary after deductions as required by law until your debt is paid or otherwise resolved. This will be done after separate written notices are sent and opportunities for a records review and hearing have been provided to you by ED.

FMS is required by ED to prepare a Litigation Package for ED submission to the U.S. Department of Justice to review for litigation.

Contact us at our toll free telephone number, 877-291-8405, and obtain information about making a reasonable, affordable, and voluntary payment arrangement.

Your account balance may be periodically increased due to the addition of accrued interest or other charges as provided in the agreement with the original creditor or as otherwise provided by Federal and/or State Law.

FMS Investment Corp. (FMS) office hours are: 8 a.m. - 9 p.m. Monday - Thursday and 8 a.m. - 5 p.m. Friday (Central Standard Time). You may write to us at the address listed below or telephone us at the number provided below. Do not send a payment to this address.

FMS Investment Corp                              Toll Free Number:       877-291-8405
PO Box 1423                                      Toll Free Facsimile:    800-880-4583
Elk Grove Village, IL 60009-1423                 Calls may be recorded and/or monitored for quality assurance.

This communication is from a debt collector attempting to collect a debt. Any information obtained will be used for that purpose.

Please contact Jason Barnes or any other of our representatives at 877-291-8405.

CUSTOMER FEEDBACK – To provide feedback on our services, please send an e-mail to CustomerComments@fmsdc.com or call toll free at 866-430-9331

**Notice: See Reverse Side for Important Information**



FLNB Local Form 5

## Exhibit Tag/ Cover Sheet

Party submitting: ___Plaintiff___    Ex. # _61_

Admitted: Yes  or   No  (circle one)

Debtor:___Julian Rodney Rooks Jr.___

Case No.:____21-40139-KKS_____

*Adv. No.:*_____

Nature of Hearing/
Docket No:_____

_____

Dated _____07/22____ , 20_21_ .

By:_____,   **Deputy Clerk**

United States Department of Education
Freedom of Information Unit

Date:  November 22, 2017

Re: Freedom of Information Act Request

Dear Sir or Madam:

Pursuant to the Freedom of Information Act , 5 U.S.C. § 552 and the Privacy Act, 5 U.S.C. § 552a, I request of copy of :

(1) all records, <u>specifically those containing the earliest date,</u> regarding lost, missing, switched or otherwise incorrect student transcripts involving St. Matthews University School of Medicine and/or St. Joseph's College of Maine.

(2) all records, <u>specifically those containing the earliest date,</u> regarding the misrepresentation . of federal student loans involving St. Matthews University School of Medicine and/or St. Joseph's College of Maine.

(3) all records regarding why this DOE email and these documents (ex. 1-1f ) were redacted.

(4) all records pertaining to me.

I am requesting that the information be provided in the least expensive form possible (preferably electronic) along with any segregable portions that are not exempt from disclosure.

If any expenses in excess of $50.00 are incurred in connection with this request, please obtain my approval before any such charges are incurred.

I am requesting a waiver of fees because my interest in the records is not primarily commercial and because tens of millions of individuals have federal loans provided and insured under Title IV and the disclosure of this information will contribute significantly to public understanding of the operations and activities of the government.

I am requesting expedited processing because the issue of my loss of certain statutory rights will soon arise.

Please respond within 20 days. If this request is denied in whole or in part, please provide a detailed justification for withholding these records.



FLNB Local Form 5

### Exhibit Tag/ Cover Sheet

Party submitting: ___Plaintiff___     Ex. # _62_

Admitted: Yes  or   No  (circle one)

Debtor: ___Julian Rodney Rooks Jr.___

Case No.: ___21-40139-KKS___

*Adv. No.:*_____

Nature of Hearing/
Docket No:_____

_____

Dated        ___07/22___  , 20_21_ .

By:_____,   Deputy Clerk

To: United States Department of Education

November 22, 2017
OMB NO: 1845-0146

Re:  I. Request to discharge student loans received at St. Matthews's University School of Medicine (SMUSOM).
II. Request to discharge student loans prior to SMUSOM.
III. Notice of Petitioner's right to rescind the contracts.
IV. 12 questions.
V. Freedom of Information Act (FOIA) request- (sent to Washington D.C. FOIA Office).
VI. Request for relief, (Order for Settlement Agreement and Fulfillment).
VII. Oath and Affidavit.

## THIRD AND FINAL NOTICE
## PLEASE DO NOT IGNORE

Dear Sir or Madam;

Petitioner is unable to afford the full cost of printing or mailing the printed product. Petitioner provides a printed copy of sections I.-VII. Documentary and video exhibits however have been provided on compact disk and Petitioner requests the Department print these.

This letter is related to two related cases filed in the 11ᵗʰ [...]

On or about 02/24/2016, a Wendell Washington signed fo[...]

Arne Duncan, containing a 91 page complaint, 293 documentary [...]

that St. Matthews University School of Medicine misrepresented [...]

Petitioner's medical school records, and then covered up that loss, [...]

**burden of proof has not been satisfied.** This notice has 7 parts, [...]

video exhibits.

I urge the Department to cooperate and to please help end [...]

**Please respond within 30 [...]**

Please feel free to contact m[...]

Sincerely,
Julian Rodney Rooks Jr.
DOB: 11-30-1966
SS# 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
3648 Dartford Lane
Tallahassee, Florida
(850) 329-7019
julianrooks@yahoo.com

---

U.S. Postal Service™
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

SAN FRANCISCO, CA 94119

| | |
|---|---|
| Certified Mail Fee | $3.35 | 0680 |
| $2.75 | | 52 |
| Extra Services & Fees (check box, add fee as appropriate) | | |
| ☐ Return Receipt (hardcopy) | $ $1.00 | |
| ☐ Return Receipt (electronic) | $ $0.00 | Postmark |
| ☐ Certified Mail Restricted Delivery | $ $0.00 | Here |
| ☐ Adult Signature Required | $ $0.00 | |
| ☐ Adult Signature Restricted Delivery | $ $0.00 | |
| Postage | | |
| $1.61 | | |
| Total Postage and Fees | | 11/24/2017 |
| $ $7.71 | | |

Sent To
US Department of Education
Street and Apt.
PO Box 194407
City, State, San Francisco CA 94119

PS Form [...] See Instructions

---

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

US Department of Education
PO Box 194407
San Francisco CA 94119

9590 9403 0103 5077 6519 36

2. Article Number (Transfer from service label)

7015 1660 0000 8533 6104

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X  J. Eckstein          ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
J. Eckstein                      12/13

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature                    ☐ Priority Mail Express®
☐ Adult Signature Restricted Delivery ☐ Registered Mail™
☐ Certified Mail®                    ☐ Registered Mail Restricted Delivery
☐ Certified Mail Restricted Delivery  ☐ Return Receipt for Merchandise
☐ Collect on Delivery                ☐ Signature Confirmation™
☐ Collect on Delivery Restricted Delivery ☐ Signature Confirmation Restricted Delivery
☐ Mail
☐ Mail Restricted Delivery

PS Form 3811, April 2015 PSN 7530-02-000-9053        Domestic Return Receipt

FLNB Local Form 5

## Exhibit Tag/ Cover Sheet

Party submitting: __Plaintiff__          Ex. # 63

Admitted: Yes  or   No  (circle one)

Debtor: __Julian Rodney Rooks Jr.__

Case No.: __21-40139-KKS__

*Adv. No.:*_____

Nature of Hearing/
Docket No:_____

_____

Dated _____07/22____ , 20_21_.

By:_____, Deputy Clerk

to Kim resend of FOIA

Yahoo/Sent

**Julian Rooks** <julianrooks@yahoo.com>
To: edfoiamanager@ed.gov

     ⊘  Jan 31 at 12:26 PM

Hello Kim,

Per your request, I am again sending a copy of the same FOIA request the DOE signed for on 12-05-2017. Because you said there is no entity in the system for that name, I have also included the signed receipt.

If you need anything else please do not hesitate to contact me.

Thank you for your help.

Sincerely,

Julian Rodney Rooks Jr.

↓ Download all attachments as a zip file

USDOE FOIA.jpg
1007.2KB

USDOE FOIA ....jpg
322.9KB

FLNB Local Form 5

## Exhibit Tag/ Cover Sheet

Party submitting: ___Plaintiff___        Ex. # 64

Admitted: Yes  or    No  (circle one)

Debtor:___Julian Rodney Rooks Jr.___

Case No.:_____21-40139-KKS_____

*Adv. No.:*_____

Nature of Hearing/
Docket No:_____

_____

Dated        ___07/22___   , 20_21_.

By:_____,    Deputy Clerk



# UNITED STATES DEPARTMENT OF EDUCATION

## OFFICE OF MANAGEMENT

Office of the Chief Privacy Officer

January 31, 2018

Julian Rooks
3648 Dartford Lane
Tallahassee, FL  32311

RE: Privacy Act Request No. 18-00030-PA

Dear: Julian Rooks

This is in response to your letter dated November 5, 2017, requesting information pursuant the Privacy Act of 1974, 5 U.S.C. § 552a as amended. Your request was received in this office on January 31, 2018, and forwarded to the primary responsible office(s) for action.

You requested: (1) all records, specifically those containing the earliest date, regarding lost, missing, switched or otherwise incorrect student transcripts involving St. Matthews University School of Medicine and/or St. Joseph's College of Maine. (2) all records, specifically those containing the earliest date, regarding the misrepresentation of federal student loans involving St. Matthews University School of Medicine and/or St. Joseph's College of Maine. (3) all records regarding why this DOE email and these documents (ex. 1-1f) were redacted. (4) all records pertaining to me.

Please refer to the Privacy Act tracking number to check the status of your Privacy Act request at the link provided below:

http://www2.ed.gov/policy/gen/leg/foia/foiatoc.html

Any future correspondence or questions regarding your request, please contact the FOIA Public Liaison at 202-401-8365 or EDFOIAManager@ed.gov

Sincerely,

ED FOIA Manager

FLNB Local Form 5

## Exhibit Tag/ Cover Sheet

Party submitting: ___Plaintiff___   Ex. # _65_

Admitted: Yes  or   No  (circle one)

Debtor:___Julian Rodney Rooks Jr.___

Case No.:_____21-40139-KKS_____

*Adv. No.:*_____

Nature of Hearing/
Docket No:_____

_____

Dated _____07/22_____ , 20_21_ .

By:_____,   Deputy Clerk

To: United States Department of Education
    Office of Management
    Office of the Chief Privacy Officer
    Public Liason                                          Date February 1, 2018

Re: multiple factual errors and possible ommision in your first response

### NOTICE OF ERRORS IN YOUR FIRST RESPONSE
### TO PETITIONER'S FOIA/PRIVACY ACT REQUEST AND
### REQUEST FOR CORRECTION OF DOE RECORDS

Dear Sir or Madam:



The DOE signed for my FOIA/Privacy Act request on 12-05-2017 (57 days ago).

I received no response.

I contacted you yesterday to inquire about the status of my FOIA/Privacy Act request.
Kim told me there was "no entry in the system" for my name and asked me to re-send the request.

This morning, I read the first response letter you sent yesterday. Your letter contains multiple
errors and possibly a serious omission. I am writing this letter to ask the DOE to correct it's records
and to set the record straight.

**ERROR #(1)** Your letter incorrectly states:

> Dear: Julian Rooks
>
> This is in response to your letter dated November 5, 2017, requesti
> Privacy Act of 1974, 5 U.S.C. § 552a as amended. Your request wa

This is not correct. My letter to you was not dated
November 5, 2017. It was dated November 22, 2017.

> United States Department of Education
> Freedom of Information Unit                Date:   November 22, 2017
>
> Re: Freedom of Information Act Request
>
> Dear Sir or Madam:
>
>         Pursuant to the Freedom of Information Act , 5 U.S.C. § 552 and the Privacy Act,
> 552a. I request of copy of :

**ERROR #(2)** Your letter incorrectly states:

> Privacy Act of 1974, 5 U.S.C. § 552a as amended. Your request was received in this office on
> January 31, 2018, and forwarded to the primary responsible office(s) for action.

This is not correct. My request was received in your office and signed for by "K Jones"
on December 5, 2017, not January 31, 2018.



The request you received on January 31, 2018 was a copy
of the original request, dated
November 22, 2017, mailed on
November 24, 2017 and signed
for by your office on
December 5, 2017.

What happened to th



I noticed your letter does not mention any FOIA request, onl
Is this normal?

        Thank you,
        Sincerely,

FLNB Local Form 5

## Exhibit Tag/ Cover Sheet

Party submitting: ___Plaintiff___     Ex. # 66

Admitted: Yes  or   No  (circle one)

Debtor:___Julian Rodney Rooks Jr.___

Case No.:_____21-40139-KKS___

*Adv. No.:*_____

Nature of Hearing/
Docket No:_____

_____

Dated        ___07/22___ , 20_21_ .

By:_____,   Deputy Clerk

Page 2 – Julian Rooks
18-00030-PA


March 2, 2018


Julian Rooks
3548 Dartford Lane
Tallahassee, FL  32311

RE: FOIA Request No. (18-00030-PA)

Dear Julian Rooks:

This is the final response to your request dated November 5, 2017, requesting information pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552. Your request was received in the FOIA Service Center (FSC) on January 31, 2018, and was forwarded to the appropriate office within the Department of Education (the Department) for any responsive documents they may have.

You requested the following:

(1) all records, specifically those containing the earliest date, regarding lost, missing, switched or otherwise incorrect student transcripts involving St. Matthews University School of Medicine and/or St. Joseph's College of Maine.
(2) all records, specifically those containing the earliest date, regarding the misrepresentation of federal student loans involving St. Matthews University School of Medicine and/or St. Joseph's College of Maine.
(3) all records regarding why this DOE email and these documents (ex. 1-1f) were redacted.
(4) all records pertaining to me.

The Department recognizes this request to be a Privacy Act request pursuant to the Privacy Act of 1974, 5 U.S.C. § 552a as amended, and the Department's regulation implementing the Privacy Act (34 CFR Part 5b). The request was forwarded to Federal Student Aid's (FSA's) Business Operations for research and response.  Business Operations provided copies of your student loan documents to include: application and promissory note, St. Joseph's College Notice of Loan Guarantee and Disclosure Statement, Finance Authority of Maine (FAME) Indemnification Agreements, Statement of Purchased Account and correspondence documents. No redactions were made to the documents as this request was fulfilled under the Privacy Act. A copy of your loan details as derived from the National Student Loan Database System (NSLDS) is also being provided.

NSLDS is the Department's central database for student aid. NSLDS receives data from schools, guaranty agencies, the Direct Loan program, and other Department. NSLDS Student Access provides a centralized, integrated view of Title IV loans and grants so that recipients of Title IV Aid can access and inquire about their Title IV loans and/or grant data.  The borrower can access these records by visiting https://www.nslds.ed.gov/ and setting up an FSA ID, which will grant them system access to see their loan details.

Page 2 – Julian Rooks
18-00030-PA

For item 1, you will need to contact the schools directly for a copy of your transcripts as the Department does not maintain them.

For item 3, you would need to refer to your final letter on your appeal rights if you believe information should not be redacted. I could not find a request under your name so I cannot provide additional information.

Enclosed with this letter are 69 pages that are responsive to your request. If you have questions concerning the information provided above please contact the office below:

Borrower Services, Customer Care Group
500 W. Madison St., Suite 1520
Chicago, IL  60661-4544
1-800-621-3115
www.FederalStudentAid.ed.gov
1-800-4-FED-AID

If you have any questions, please contact the FSC at (202) 401-8365 or EDFOIAMANAGER@ed.gov.

Sincerely,

*Arthur Caliguiran*

Arthur Caliguiran
FOIA Public Liaison
FOIA Service Center

Enclosure

FLNB Local Form 5

## Exhibit Tag/ Cover Sheet

Party submitting: _Plaintiff_        Ex. # 67

Admitted: Yes  or   No  (circle one)

Debtor:_ Julian Rodney Rooks Jr._

Case No.:_____ 21-40139-KKS_____

*Adv. No.:*_____

Nature of Hearing/
Docket No:_____

_____

Dated        _07/22_____ , 20_21_.

By:_____, Deputy Clerk



February 14, 2018

Julian Rooks Jr.
3648 Dartford Lane
Tallahassee, FL 32311

Request No.: 18-00030-PA

The U.S. Department of Education (ED) is responding to your request for certain records
in its files pertaining to student loans. Pursuant to your request ED has conducted a search
for the information.

Along with information that other laws require be withheld, or which is overly
burdensome to furnish or involves internal concerns exclusively, any information related
to personal privacy, financial institutions and banks, attorney-client privilege, and law
enforcement activities will likewise be redacted from materials ED is furnishing.
Authority for withholding certain types of documents or portions thereof is to be found in
5 U.S.C. 552 and or 5 U.S.C. 552a. Denials of information may be appealed to ED's
Assistant Secretary for the Office of Management, in Washington, DC, provided the
appeals are in writing.

You are requesting a copy of all records regarding your student loan(s).

Enclosed is a copy of the Application and Promissory Note, Notice of Loan Guarantee
and Disclosure Statement, Idemnification Agreement, Loan Inquiry, Statement of
Purchased Account, Billing Statement, Correspondence, and a copy of a loan history
retrieved from NSLDS (National Student Loan Data System).

Julian Rooks Jr.
February 14, 2018
Page 2 of 2

I trust that this information has been helpful to you.

Sincerely,

Melissa Yancy-Venson
Loan Analyst
Operations Service

FLNB Local Form 5

### Exhibit Tag/ Cover Sheet

Party submitting: __Plaintiff__        Ex. # 68

Admitted: Yes   or    No  (circle one)

Debtor:___Julian Rodney Rooks Jr.___

Case No.:_____21-40139-KKS_____

*Adv. No.:*_____

Nature of Hearing/
Docket No:_____
_____

Dated        ___07/22___   , 20_21_.

By:_____,   Deputy Clerk



FINANCE AUTHORITY OF MAINE
C/O SALLIE MAE, INC.
P.O. BOX 6180
INDIANAPOLIS IN 46206-6180

### IDEMNIFICATION AGREEMENT FOR THE ASSIGNMENT OF FEDERAL FAMILY EDUCATION LOAN WITH DAMAGED PROMISSORY NOTE OR PROMISSORY NOTE WITH UNINITIALED ALTERATIONS

Borrower's Current Name: __ROOKS JR_____    __JULIAN___ __R__
                          Last                              First    MI

Borrower's Previous Name: _____
                          (Last, First, Middle)

Borrower's Correct SSN:   __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_____

First Disbursement Date:  __02/19/1999_____

Last Disbursement Date:   __02/19/1999_____

Disbursement Amount:      __$7,139.00_____

In assigning Stafford Student Loans/Supplemental Loans for Students/Parent (PLUS) Loans/Consolidated Loans to the Secretary of Education (hereinafter "the Secretary"), the Finance Authority of Maine (hereinafter "Guaranty Agency") agrees that if any loan assigned to the Secretary by the Guaranty Agency without an original promissory note or certified true copy in good condition should become uncollectable by reason of such damaged promissory note or because it contains alterations without the borrower's initials, or if the Secretary, in his sole discretion, determines that the loan cannot be enforced because of the damaged or altered promissory note, the Secretary is entitled to recover from the Guaranty Agency the amount of reinsurance attributable to such loan previously paid to the Guaranty Agency, plus interest from the date the reinsurance was paid. The Secretary may recover amounts due under this agreement by withholding such amounts from any payments due to the Guaranty Agency from the Department of Education.

The Guaranty Agency also agrees that the assignment of any loan covered by this Agreement includes the assignment to the Secretary of any rights held by the Guaranty Agency under any indemnification agreement or warranty executed by the lender in favor of the Guaranty Agency (lender indemnification agreement). In the event the Secretary recovers from the Guaranty Agency the amount paid in reinsurance for a loan covered by the agreement, the Secretary will release to the Guaranty Agency his rights in the applicable lender indemnification agreement.

06/11/2014
DATE

Signature of Guaranty Agency Official
Douglas E. St. Peters
Vice President Portfolio Management
As authorized agent for
Finance Authority of Maine

DSUAME



FINANCE AUTHORITY OF MAINE
C/O SALLIE MAE, INC.
P.O. BOX 6180
INDIANAPOLIS IN 46206-6180

## IDEMNIFICATION AGREEMENT FOR THE ASSIGNMENT OF FEDERAL FAMILY EDUCATION LOAN WITH DAMAGED PROMISSORY NOTE OR PROMISSORY NOTE WITH UNINITIALED ALTERATIONS

Borrower's Current Name: ROOKS JR _____ JULIAN___R_____
                         Last                           First    MI

Borrower's Previous Name: _____
                          (Last, First, Middle)

Borrower's Correct SSN:   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

First Disbursement Date:  02/19/1999

Last Disbursement Date:   02/19/1999

Disbursement Amount:      $2,166.00

In assigning Stafford Student Loans/Supplemental Loans for Students/Parent (PLUS) Loans/Consolidated Loans to the Secretary of Education (hereinafter "the Secretary"), the Finance Authority of Maine (hereinafter "Guaranty Agency") agrees that if any loan assigned to the Secretary by the Guaranty Agency without an original promissory note or certified true copy in good condition should become uncollectable by reason of such damaged promissory note or because it contains alterations without the borrower's initials, or if the Secretary, in his sole discretion, determines that the loan cannot be enforced because of the damaged or altered promissory note, the Secretary is entitled to recover from the Guaranty Agency the amount of reinsurance attributable to such loan previously paid to the Guaranty Agency, plus interest from the date the reinsurance was paid. The Secretary may recover amounts due under this agreement by withholding such amounts from any payments due to the Guaranty Agency from the Department of Education.

The Guaranty Agency also agrees that the assignment of any loan covered by this Agreement includes the assignment to the Secretary of any rights held by the Guaranty Agency under any indemnification agreement or warranty executed by the lender in favor of the Guaranty Agency (lender indemnification agreement). In the event the Secretary recovers from the Guaranty Agency the amount paid in reinsurance for a loan covered by the agreement, the Secretary will release to the Guaranty Agency his rights in the applicable lender indemnification agreement.

06/11/2014
DATE

Signature of Guaranty Agency Official
Douglas E. St. Peters
Vice President Portfolio Management
As authorized agent for
Finance Authority of Maine

DSUAME



FINANCE AUTHORITY OF MAINE
5AD SALLIE MAE, INC.
P.O. BOX 6180
INDIANAPOLIS IN 46206-6180

## IDEMNIFICATION AGREEMENT FOR THE ASSIGNMENT OF FEDERAL FAMILY EDUCATION LOAN WITH DAMAGED PROMISSORY NOTE OR PROMISSORY NOTE WITH UNINITIALED ALTERATIONS

Borrower's Current Name: ROOKS JR _____ JULIAN ___ R ___
                         Last                  First   MI

Borrower's Previous Name: _____
                          (Last, First, Middle)

Borrower's Correct SSN:    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 _____

First Disbursement Date:   02/19/1999 _____

Last Disbursement Date:    02/19/1999 _____

Disbursement Amount:       $2,166.00 _____

In assigning Stafford Student Loans/Supplemental Loans for Students/Parent (PLUS) Loans/Consolidated Loans to the Secretary of Education (hereinafter "the Secretary"), the Finance Authority of Maine (hereinafter "Guaranty Agency") agrees that if any loan assigned to the Secretary by the Guaranty Agency without an original promissory note or certified true copy in good condition should become uncollectable by reason of such damaged promissory note or because it contains alterations without the borrower's initials, or if the Secretary, in his sole discretion, determines that the loan cannot be enforced because of the damaged or altered promissory note, the Secretary is entitled to recover from the Guaranty Agency the amount of reinsurance attributable to such loan previously paid to the Guaranty Agency, plus interest from the date the reinsurance was paid. The Secretary may recover amounts due under this agreement by withholding such amounts from any payments due to the Guaranty Agency from the Department of Education.

The Guaranty Agency also agrees that the assignment of any loan covered by this Agreement includes the assignment to the Secretary of any rights held by the Guaranty Agency under any indemnification agreement or warranty executed by the lender in favor of the Guaranty Agency (lender indemnification agreement). In the event the Secretary recovers from the Guaranty Agency the amount paid in reinsurance for a loan covered by the agreement, the Secretary will release to the Guaranty Agency his rights in the applicable lender indemnification agreement.

06/11/2014
DATE

Douglas E. St. Peters (UP)
Signature of Guaranty Agency Official
Douglas E. St. Peters
Vice President Portfolio Management
As authorized agent for
Finance Authority of Maine

DSUAME



FINANCE AUTHORITY OF MAINE
FINANCE AUTHORITY OF MAINE
C/O SALLIE MAE, INC.
P.O. BOX 6180
INDIANAPOLIS IN 46206-6180

### IDEMNIFICATION AGREEMENT FOR THE ASSIGNMENT OF FEDERAL FAMILY EDUCATION LOAN WITH DAMAGED PROMISSORY NOTE OR PROMISSORY NOTE WITH UNINITIALED ALTERATIONS

Borrower's Current Name:  ROOKS JR                      JULIAN      R
                          Last                          First    MI

Borrower's Previous Name:  _____
                            (Last, First, Middle)

Borrower's Correct SSN:    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

First Disbursement Date:   05/28/1999

Last Disbursement Date:    05/28/1999

Disbursement Amount:       $10,000.00

In assigning Stafford Student Loans/Supplemental Loans for Students/Parent (PLUS) Loans/Consolidated Loans to the Secretary of Education (hereinafter "the Secretary"), the Finance Authority of Maine (hereinafter "Guaranty Agency") agrees that if any loan assigned to the Secretary by the Guaranty Agency without an original promissory note or certified true copy in good condition should become uncollectable by reason of such damaged promissory note or because it contains alterations without the borrower's initials, or if the Secretary, in his sole discretion, determines that the loan cannot be enforced because of the damaged or altered promissory note, the Secretary is entitled to recover from the Guaranty Agency the amount of reinsurance attributable to such loan previously paid to the Guaranty Agency, plus interest from the date the reinsurance was paid.  The Secretary may recover amounts due under this agreement by withholding such amounts from any payments due to the Guaranty Agency from the Department of Education.

The Guaranty Agency also agrees that the assignment of any loan covered by this Agreement includes the assignment to the Secretary of any rights held by the Guaranty Agency under any indemnification agreement or warranty executed by the lender in favor of the Guaranty Agency (lender indemnification agreement).  In the event the Secretary recovers from the Guaranty Agency the amount paid in reinsurance for a loan covered by the agreement, the Secretary will release to the Guaranty Agency his rights in the applicable lender indemnification agreement.

06/11/2014
DATE

Signature of Guaranty Agency Official
Douglas E. St. Peters
Vice President Portfolio Management
As authorized agent for
Finance Authority of Maine

DSUAME



**USAFunds**

USA FUNDS, INC.
C/O SALLIE MAE, INC.
P.O. BOX 6108
INDIANAPOLIS IN 46206-6108

### IDEMNIFICATION AGREEMENT FOR THE ASSIGNMENT OF FEDERAL FAMILY EDUCATION LOAN WITH DAMAGED PROMISSORY NOTE OR PROMISSORY NOTE WITH UNINITIALED ALTERATIONS

Borrower's Current Name:  ROOKS JR                                JULIAN      R
                          Last                                   First    MI

Borrower's Previous Name: _____
                            (Last, First, Middle)

Borrower's Correct SSN:    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

First Disbursement Date:   08/17/1993

Last Disbursement Date:    08/17/1993

Disbursement Amount:       $7,500.00

In assigning Stafford Student Loans/Supplemental Loans for Students/Parent (PLUS) Loans/Consolidated Loans to the Secretary of Education (hereinafter "the Secretary"), United Student Aid Funds, Inc. (hereinafter "Guaranty Agency") agrees that if any loan assigned to the Secretary by the Guaranty Agency without an original promissory note or certified true copy in good condition should become uncollectable by reason of such damaged promissory note or because it contains alterations without the borrower's initials, or if the Secretary, in his sole discretion, determines that the loan cannot be enforced because of the damaged or altered promissory note, the Secretary is entitled to recover from the Guaranty Agency the amount of reinsurance attributable to such loan previously paid to the Guaranty Agency, plus interest from the date the reinsurance was paid. The Secretary may recover amounts due under this agreement by withholding such amounts from any payments due to the Guaranty Agency from the Department of Education.

The Guaranty Agency also agrees that the assignment of any loan covered by this Agreement includes the assignment to the Secretary of any rights held by the Guaranty Agency under any indemnification agreement or warranty executed by the lender in favor of the Guaranty Agency (lender indemnification agreement). In the event the Secretary recovers from the Guaranty Agency the amount paid in reinsurance for a loan covered by the agreement, the Secretary will release to the Guaranty Agency his rights in the applicable lender indemnification agreement.

06/11/2014                        _Douglas E. St. Peters_ (signature)
DATE                              Signature of Guaranty Agency Official
                                  Douglas E. St. Peters
                                  Vice President Portfolio Management
                                  As authorized agent for
                                  United Student Aid Funds, Inc.

DSUAUS



**USAFunds**

USA FUNDS, INC.
C/O SALLIE MAE, INC.
P.O. BOX 6108
INDIANAPOLIS IN 46206-6108

### IDEMNIFICATION AGREEMENT FOR THE ASSIGNMENT OF FEDERAL FAMILY EDUCATION LOAN WITH DAMAGED PROMISSORY NOTE OR PROMISSORY NOTE WITH UNINITIALED ALTERATIONS

Borrower's Current Name:  ROOKS JR _____ JULIAN ___ R ___
                          Last                          First    MI

Borrower's Previous Name: _____
                              (Last, First, Middle)

Borrower's Correct SSN:   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

First Disbursement Date:  08/11/1994

Last Disbursement Date:   08/11/1994

Disbursement Amount:      $10,000.00

In assigning Stafford Student Loans/Supplemental Loans for Students/Parent (PLUS) Loans/Consolidated Loans to the Secretary of Education (hereinafter "the Secretary"), United Student Aid Funds, Inc. (hereinafter "Guaranty Agency") agrees that if any loan assigned to the Secretary by the Guaranty Agency without an original promissory note or certified true copy in good condition should become uncollectable by reason of such damaged promissory note or because it contains alterations without the borrower's initials, or if the Secretary, in his sole discretion, determines that the loan cannot be enforced because of the damaged or altered promissory note, the Secretary is entitled to recover from the Guaranty Agency the amount of reinsurance attributable to such loan previously paid to the Guaranty Agency, plus interest from the date the reinsurance was paid. The Secretary may recover amounts due under this agreement by withholding such amounts from any payments due to the Guaranty Agency from the Department of Education.

The Guaranty Agency also agrees that the assignment of any loan covered by this Agreement includes the assignment to the Secretary of any rights held by the Guaranty Agency under any indemnification agreement or warranty executed by the lender in favor of the Guaranty Agency (lender indemnification agreement). In the event the Secretary recovers from the Guaranty Agency the amount paid in reinsurance for a loan covered by the agreement, the Secretary will release to the Guaranty Agency his rights in the applicable lender indemnification agreement.

06/11/2014
DATE

_Douglas E. St. Peters_
Signature of Guaranty Agency Official
Douglas E. St. Peters
Vice President Portfolio Management
As authorized agent for
United Student Aid Funds, Inc.

DSUAUS


USAFunds

USA FUNDS, INC.
C/O SALLIE MAE, INC.
P.O. BOX 6108
INDIANAPOLIS IN 46206-6108

## IDEMNIFICATION AGREEMENT FOR THE ASSIGNMENT OF FEDERAL FAMILY EDUCATION LOAN WITH DAMAGED PROMISSORY NOTE OR PROMISSORY NOTE WITH UNINITIALED ALTERATIONS

Borrower's Current Name: ROOKS JR                          JULIAN      R
                         Last                              First       MI

Borrower's Previous Name: _____
                              (Last, First, Middle)

Borrower's Correct SSN:    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

First Disbursement Date:    10/15/1997

Last Disbursement Date:     10/15/1997

Disbursement Amount:        $8,500.00

In assigning Stafford Student Loans/Supplemental Loans for Students/Parent (PLUS) Loans/Consolidated Loans to the Secretary of Education (hereinafter "the Secretary"), United Student Aid Funds, Inc.  (hereinafter "Guaranty Agency") agrees that if any loan assigned to the Secretary by the Guaranty Agency without an original promissory note or certified true copy in good condition should become uncollectable by reason of such damaged promissory note or because it contains alterations without the borrower's initials, or if the Secretary, in his sole discretion, determines that the loan cannot be enforced because of the damaged or altered promissory note, the Secretary is entitled to recover from the Guaranty Agency the amount of reinsurance attributable to such loan previously paid to the Guaranty Agency, plus interest from the date the reinsurance was paid.  The Secretary may recover amounts due under this agreement by withholding such amounts from any payments due to the Guaranty Agency from the Department of Education.

The Guaranty Agency also agrees that the assignment of any loan covered by this Agreement includes the assignment to the Secretary of any rights held by the Guaranty Agency under any indemnification agreement or warranty executed by the lender in favor of the Guaranty Agency (lender indemnification agreement).  In the event the Secretary recovers from the Guaranty Agency the amount paid in reinsurance for a loan covered by the agreement, the Secretary will release to the Guaranty Agency his rights in the applicable lender indemnification agreement.

06/11/2014
DATE

_Douglas E. St. Peters_
Signature of Guaranty Agency Official
Douglas E. St. Peters
Vice President Portfolio Management
As authorized agent for
United Student Aid Funds, Inc.

DSUAUS


**USAFunds**

USA FUNDS, INC.
C/O SALLIE MAE, INC.
P.O. BOX 6108
INDIANAPOLIS IN 46206-6108

### IDEMNIFICATION AGREEMENT FOR THE ASSIGNMENT OF FEDERAL FAMILY EDUCATION LOAN WITH DAMAGED PROMISSORY NOTE OR PROMISSORY NOTE WITH UNINITIALED ALTERATIONS

Borrower's Current Name: ROOKS JR            JULIAN    R
                           Last                                First    MI

Borrower's Previous Name: _____
                                (Last, First, Middle)

Borrower's Correct SSN:    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

First Disbursement Date:    10/15/1997

Last Disbursement Date:    10/15/1997

Disbursement Amount:    $8,600.00

In assigning Stafford Student Loans/Supplemental Loans for Students/Parent (PLUS) Loans/Consolidated Loans to the Secretary of Education (hereinafter "the Secretary"), United Student Aid Funds, Inc. (hereinafter "Guaranty Agency") agrees that if any loan assigned to the Secretary by the Guaranty Agency without an original promissory note or certified true copy in good condition should become uncollectable by reason of such damaged promissory note or because it contains alterations without the borrower's initials, or if the Secretary, in his sole discretion, determines that the loan cannot be enforced because of the damaged or altered promissory note, the Secretary is entitled to recover from the Guaranty Agency the amount of reinsurance attributable to such loan previously paid to the Guaranty Agency, plus interest from the date the reinsurance was paid. The Secretary may recover amounts due under this agreement by withholding such amounts from any payments due to the Guaranty Agency from the Department of Education.

The Guaranty Agency also agrees that the assignment of any loan covered by this Agreement includes the assignment to the Secretary of any rights held by the Guaranty Agency under any indemnification agreement or warranty executed by the lender in favor of the Guaranty Agency (lender indemnification agreement). In the event the Secretary recovers from the Guaranty Agency the amount paid in reinsurance for a loan covered by the agreement, the Secretary will release to the Guaranty Agency his rights in the applicable lender indemnification agreement.

06/11/2014
DATE

                 *Douglas E. St. Peters*
                 Signature of Guaranty Agency Official
                 Douglas E. St. Peters
                 Vice President Portfolio Management
                 As authorized agent for
DSUAUS            United Student Aid Funds, Inc.



**USAFunds**

USA FUNDS, INC.
C/O SALLIE MAE, INC.
P.O. BOX 6108
INDIANAPOLIS IN 46206-6108

## IDEMNIFICATION AGREEMENT FOR THE ASSIGNMENT OF FEDERAL FAMILY EDUCATION LOAN WITH DAMAGED PROMISSORY NOTE OR PROMISSORY NOTE WITH UNINITIALED ALTERATIONS

Borrower's Current Name: ROOKS JR                    JULIAN       R
                         Last                        First    MI

Borrower's Previous Name: _____
                          (Last, First, Middle)

Borrower's Correct SSN:    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

First Disbursement Date:   08/18/1993

Last Disbursement Date:    08/18/1993

Disbursement Amount:       $10,000.00

In assigning Stafford Student Loans/Supplemental Loans for Students/Parent (PLUS) Loans/Consolidated Loans to the Secretary of Education (hereinafter "the Secretary"), United Student Aid Funds, Inc. (hereinafter "Guaranty Agency") agrees that if any loan assigned to the Secretary by the Guaranty Agency without an original promissory note or certified true copy in good condition should become uncollectable by reason of such damaged promissory note or because it contains alterations without the borrower's initials, or if the Secretary, in his sole discretion, determines that the loan cannot be enforced because of the damaged or altered promissory note, the Secretary is entitled to recover from the Guaranty Agency the amount of reinsurance attributable to such loan previously paid to the Guaranty Agency, plus interest from the date the reinsurance was paid. The Secretary may recover amounts due under this agreement by withholding such amounts from any payments due to the Guaranty Agency from the Department of Education.

The Guaranty Agency also agrees that the assignment of any loan covered by this Agreement includes the assignment to the Secretary of any rights held by the Guaranty Agency under any indemnification agreement or warranty executed by the lender in favor of the Guaranty Agency (lender indemnification agreement). In the event the Secretary recovers from the Guaranty Agency the amount paid in reinsurance for a loan covered by the agreement, the Secretary will release to the Guaranty Agency his rights in the applicable lender indemnification agreement.

06/11/2014
DATE

Douglas E. St. Peters

Signature of Guaranty Agency Official
Douglas E. St. Peters
Vice President Portfolio Management
As authorized agent for
United Student Aid Funds, Inc.

DSUAUS

FLNB Local Form 5

## Exhibit Tag/ Cover Sheet

Party submitting: ___Plaintiff___    Ex. # 69

Admitted: Yes  or    No  (circle one)

Debtor:___Julian Rodney Rooks Jr.___

Case No.:____21-40139-KKS____

*Adv. No.:*_____

Nature of Hearing/
Docket No:_____

_____

Dated _____07/22_____ , 20_21_.

By:_____,  Deputy Clerk



**DEPARTMENT OF THE TREASURY**
**BUREAU OF THE FISCAL SERVICE**
**BIRMINGHAM, AL 35201-1686**
May 23, 2018

Julian Rook Jr.
3648 Dartford Lane
Tallahassee, FL 32311

Dear Julian Rooks Jr.:

This is in response to your recent correspondence.

At the present time, our records in the Treasury Offset Program database indicate one active debt under your name. As of this date, if a Federal payment were to be issued to you, it would be subject to offset. This debt was submitted by the U.S. Department of Education:

> U.S. Department of Education
> Federal Offset Unit
> P.O. Box 5227
> Greenville, TX 75403
> Telephone: 800-621-3115

If you have any questions about this debt, you must contact the agency at the address and telephone number listed above. That agency maintains all your debt records and makes all decisions regarding the debt, including removal from the Treasury Offset Program and the refunding of any monies taken in error. Treasury-Bureau of the Fiscal Service does not maintain individual debt case files.

U.S. Department of the Treasury
Bureau of the Fiscal Service
(800) 304-3107
Telecommunications Device for the Deaf (TDD) (866) 297-0517

FLNB Local Form 5

## Exhibit Tag/ Cover Sheet

Party submitting: __Plaintiff__    Ex. # _70_

Admitted: Yes  or   No  (circle one)

Debtor: __Julian Rodney Rooks Jr.__

Case No.: ___21-40139-KKS___

*Adv. No.:*_____

Nature of Hearing/
Docket No:_____

_____

Dated        __07/22__    , 20_21_.

By:_____,   Deputy Clerk

To: Denise L. Carter
    United States Department of Education
    Principal Deputy Assistant Secretary for the Office of Management           May 9, 2018
**Re: Appeal of FOIA/Privacy Act Request No. 18-00030-PA.**
From: Julian Rodney Rooks Jr.
    3648 Dartford Lane
    Tallahassee, FL 32311

**ADMINISTRATIVE APPEAL OF FOIA REQUEST**

On December 5, 2018, the DOE signed for Petitioner's FOIA/Privacy Act request (exhibit 1).

Fifty seven days later, Petitioner asked why the DOE had failed to respond to this request. Later that same day, the DOE sent this first response mentioning the Privacy Act four times but failing to mention the Freedom of Information Act once and it contains multiple incorrect dates (exhibit 2).

Five days later, Petitioner mailed this letter via registered mail, asking the DOE to correct these multiple errors in it's first response (exhibit 3). Petitioner received no response and no signed green card that Petitioner paid for.

About March 2, 2018 Petitioner received by email this "final response" (exhibit 4) and this separate 2-page response (exhibit 5) with an additional 69 pages.

**DOE "final response" letter dated March 2, 2018 (exhibit 4).**

**FOIA request #1:**
    DOE respondent, Mr. Arthur Caliguiran states "you will need to contact the school directly for a copy of your transcripts as the Department does not maintain them." (exhibit 4). I thank Mr. Caliguiran for his direction but this is not the information I requested. I received no information regarding request #1.

**FOIA request #2:**
    Mr. Caliguiran fails to acknowledge the existence of this request (#2), skips that number entirely and makes no mention of it at all (exhibit 4). I received no information regarding request #2.

**FOIA request #3:**
    Mr. Caliguiran indicates DOE's need for this appeal request "I could not find a request under your name so I cannot provide additional information". I received no information regarding request #3.

**Privacy Act request #4:**
    DOE changed my request, ver batum, claimed I asked for something else, and responded with 69 pages and this 2 page cover letter (exhibit 5).

**Inaccurate address and pages:**
    This DOE "final response" letter (exhibit 4) has an incorrect street address. If the DOE were to send any written correspondence it would be delivered to the wrong home. Both pages are listed as "page 2".

**DOE cover letter dated February 14, 2018 (exhibit 5).**

**Inaccurate statement:**
    The DOE respondent Melissa Yancy-Venson states; " You are requesting a copy of all records regarding your student loan(s)" (exhibit 5, pg 1). Petitioner respectfully disagr
regarding your student loan(s)", Petitioner asked for "all records
**Summary**
    Petitioner appeals the DOE's denial because it: (a) deflects r
ignores request #2 entirely, (c) requests an appeal to obtain request
"additional information", (d) inaccurately re-phrases the Petitioner's
Petitioner's request to correct the record regarding this request (exhi
recognizes this request to be a Privacy Act request" but fails to state
this as a FOIA request, (g) fails to deny the existence of the requeste
statutes governing the response.
    Thank you.
    Julian Rodney Rooks Jr.

                    page 1 of 7



FLNB Local Form 5

## Exhibit Tag/ Cover Sheet

Party submitting: ___Plaintiff___   Ex. # _71_

Admitted: Yes  or   No  (circle one)

Debtor: ___Julian Rodney Rooks Jr.___

Case No.: ___21-40139-KKS___

*Adv. No.:*_____

Nature of Hearing/
Docket No:_____

_____

Dated   ___07/22___ , 20_21_ .

By:_____,  Deputy Clerk

DEPT 618   1464797218084
PO BOX 4115
CONCORD CA  94524

| ACCOUNT NO. | PRINCIPAL BAL. | INTEREST |
|---|---|---|
| 1020194499 | $138,429.68 | $43,660.04 |
| PENALTY CHARGES | *FEES & COSTS | CURRENT BALANCE |
| $0.00 | $44,320.67 | $226,410.39 |
| August 7, 2018 DO NOT SEND CASH. MAKE CHECKS PAYABLE TO: U.S. DEPARTMENT OF EDUCATION. SHOW YOUR SOCIAL SECURITY NUMBER ON YOUR CHECK. RETURN THIS PORTION WITH YOUR PAYMENT. NOTE NAME/ADDRESS/PHONE NO. CHANGES ON BACK | AMOUNT PAID | |

ADDRESS SERVICE REQUESTED

JULIAN ROOKS JR
3648 DARTFORD LN
TALLAHASSEE FL 32311-7773

SEND PAYMENT TO:

National Payment Center
US Department of Education
PO BOX 105028
ATLANTA GA  30348-5028

4  410201944993  0000001234  00000603        4  410201944993  0001011900  22641038

- - - - A DETACH AND KEEP THIS PORTION FOR YOUR RECORDS - - - -

August 7, 2018
Original Creditor:   KEY BANK USA - KER - 4TH FLOOR        See Below for Full List of Creditors
Collector Name:   Nichole Liddell
Collector Phone:   888-253-4239
AFS Acct#:              1020194499

Dear JULIAN ROOKS JR,

This letter is to notify you that Action Financial Services, LLC (AFS) has commenced collection efforts regarding your debt referred to us by the U.S. Department of Education.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Due to your failure to honor your obligation, the entire unpaid balance of your loan is due and payable. We have been authorized to accept a reduced payment should you have the ability to resolve the debt with a one-time payment, or we can assist you in establishing a possible repayment program on your debt. To discuss resolution, you should telephone your AFS account representative at 888-253-4239 to discuss your options.

As of the date of this letter, you owe the balance reflected above. Because of interest and other charges assessed by your creditor that may vary from day to day, the amount due on the day you pay may be greater. Thus, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you.

This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.

Original Creditor:
KEY BANK USA - KER - 4TH
FLOOR                JPMORGANCHASE BANK

SEE THE REVERSE SIDE FOR IMPORTANT INFORMATION.

P.O. Box 3250, Central Point, OR 97502
Main Line:  888-253-4239                                AFVSBA-0802-1065957756-02901-359