# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

| | |
|---|---|
| **IN RE:**<br><br>**JULIAN RODNEY ROOKS, JR.,**<br><br>Debtor. | **CASE NO.: 21-40139-KKS**<br>Chapter 7<br>Judge Karen K. Specie |
| **JULIAN RODNEY ROOKS, JR.,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES DEPARTMENT OF EDUCATION, ET AL**<br><br>Defendant. | Adversary Case: 21-04019-KKS |

## MOTION TO DISMISS COMPLAINT

COMES NOW the United States of America, on behalf of its agency, the United States Department of Education (DOE), pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7012 of the Federal Rules of Bankruptcy Procedure, hereby files this Motion to Dismiss Complaint (ECF 1) and in support thereof states as follows:

1.   Plaintiff has brought an adversary action in bankruptcy against the DOE and various other entities seeking, among other relief, to have his student loans

discharged based upon allegations of fraudulent and negligent misrepresentations, negligence, breach of contract, and special damages. (ECF 1; Counts 1-5). Plaintiff also seeks over 6 million dollars in damages and treble damages as an award of punitive damages totaling $19,656,000.00. (ECF 1 at "Prayer for Relief," pp. 23-24, ¶¶ (1)-(3)).

2. Plaintiff obtained his loans between 1993 and 1999 and as of August 17, 2021, his outstanding principal and interest is $193,192.97.[1] (See attached Gov. Ex. 1). Plaintiff has made $0.00 worth of payments on these loans. The DOE notes it has extended their policy decision to temporarily suspend collection of federal student debt under the CARES Act to January 31, 2022.

3. Plaintiff's allegations of fraudulent misrepresentations made by the schools would normally be delt with through a Borrower Defense Claim. (See DOE Borrower Defense to Repayment Application attached as Gov. Ex. 2). Plaintiff alleges that he submitted a loan discharge request that was received by DOE in December 2017. (ECF 1; ¶ 102). However, DOE does not have a record of Plaintiff submitting a Borrower Defense Claim or applying for any administrative discharge options and/or income-driven repayment plans.

---

[1] Not including outstanding collection fees.

4.       The U.S. Bankruptcy Code provides that student loans can be discharged in bankruptcy only if excepting the debt from discharge would impose an "undue hardship" on the borrower. 11 U.S.C. § 523(a)(8). Plaintiff never states in his adversary complaint that his student loans should be discharged on the basis of undue hardship. For that reason alone, his complaint should be dismissed for failure to state a claim on which relief can be granted.

5.       To the extent the adversary complaint is alleging any issues related to the Freedom of Information Act (FOIA) or Privacy Acts requests and DOE responses to those requests, including responses to any appeals he filed, that claim should be brought in district court, not bankruptcy court. Similarly, to the extent Plaintiff might be alleging that DOE has denied his request for administrative discharge of his student loans (possibly on the basis of borrower defense), any challenge to a final agency decision denying discharge is properly before the district court, not the bankruptcy court. DOE would also assert any applicable statute of limitations defense pursuant to 28 U.S.C. § 2401, which states every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues.

6.       Additionally, DOE adopts the arguments set forth by Defendant St. Joseph's College of Maine and joins in their Motion to Dismiss Adversary

Proceeding (ECF 39) that was granted by this Court on September 29, 2021. (ECF 58).

## Procedural History

On January 22, 2016, Plaintiff filed his first Voluntary Petition under Chapter 7 (Case No.: 16-40025-KKS, ECF 1) along with an adversary proceeding naming over 60 defendants, including DOE, in AP 16-04003-KKS. The Complaint was comprised of 362 pages, including exhibits, and asserted dozens of causes of action. (Case No.: 16-04003-KKS, ECF 1). Both cases were dismissed. (Case No.: 16-40025-KKS, ECF 40; Case No.: 16-04003-KKS, ECF 54).

On February 15, 2021, the Plaintiff filed a second voluntary Chapter 7 Bankruptcy Petition. (Case No.: 21-40139-KKS; ECF 1). On July 29, 2021, the Court granted the Plaintiff a discharge pursuant to 11 U.S.C. § 727. (Case No.: 21-40139-KKS; ECF 33). Plaintiff filed this adversary proceeding *pro se* on July 22, 2021, over five years after filing his first bankruptcy petition and adversary proceeding in Case Number 16-40025-KKS (ECF 1) and approximately 22 years after his last loan was obtained (Gov. Ex. 1).

## Student Loan Background

Plaintiff received loans now held by DOE that were made under loan programs authorized under Title IV of the Higher Education Act of 1965, as amended. Congress has recognized that student loans are not like other unsecured

debt and should not be discharged in bankruptcy absent showing undue hardship. 11 U.S.C. § 523(a)(8). Student loans are public assistance, designed to assist citizens with their education goals, without regard to credit history. *See* Higher Education Act of 1965, Pub. L. No. 89-329, 79 Stat. 1219 (1965) (codified as amended at 20 U.S.C. § 1071); 34 C.F.R. parts 682 and 685. Student loans are often provided as part of a package of assistance including grants, subsidized loans, parent loans, and work study. *See* Federal Student Aid, https://studentloans.gov (providing information to the public) (last visited 25 October 2020). Financial counseling occurs at several stages of the lending process. 34 C.F.R. § 685.304. Borrowers have access to their account information on the internet. *See* National Student Loan Data System, www.nslds.ed.gov (last visited 25 October 2020).

Repayment terms are generous and flexible. Student loans have interest below market rate. *See* 20 U.S.C. § 1087e(b) (interest rates fixed to treasury bills and subject to a cap). They have many other special features. They can be consolidated. 34 C.F.R. § 685.220. Borrowers have flexible repayment options, including: Graduated Repayment Plan, IBR, ICR, and Income-Sensitive Repayment Plan. *Id*. at § 685.208.[2] Repayment plans can be changed at any time.

---

[2] Income-contingent repayment plan (ICR). Under ICR, the monthly repayment amount is generally based on the total amount of the borrower's Direct Loans, family size, and adjusted gross income (including a spouse's income). *See* 34 C.F.R. § 685.208(k)(1). The amount of the payments cannot exceed 20 percent of a borrower's discretionary income computed on the basis of a set formula. Each year, Education recalculates a borrower's annual payment

Deferment and forbearance are two ways for borrowers to temporarily postpone or lower loan payments while in school, in the military, experiencing financial hardship, or in certain other situations. *Id*. at §§ 685.204, 685.205. Other possibilities include loan forgiveness, cancellation, and discharge. Student loans are discharged at the death of the borrower, meaning that the debt is not paid by the estate of the borrower and does not burden the borrower's dependents. *Id*. at § 685.212.

It is critical to the operation of the student loan program that every borrower repay the American taxpayers for their financial support to the best of their ability. Congress' aim is to "tighten the gaps through which students could avoid loan repayment." See *Douglass v. Great Lakes Higher Educ. Servs. Corp. (In re Douglass)*, 237 B.R. 652, 653 (Bankr. N.D. Ohio 1999) ("Historically, Congress has intentionally and progressively made it more difficult for student loan obligations to be discharged in bankruptcy cases."). Congress balanced the requirements of the student loan program, tax law, and bankruptcy to provide borrowers with options to pay an affordable amount toward their student loans,

---

based on changes in the borrower's adjusted gross income, variable interest rate, income percentage factors in the annual notice, and poverty guidelines. A borrower makes payments until the loan is repaid in full or until the loan has been in repayment through the end of the ICR period. In general, the maximum repayment period is 25 years. 34 C.F.R. § 685.209(b)(1). At the end of the ICR period, Education cancels any unpaid portion of the loan. 34 C.F.R. § 685.209(b)(3). The ICP plan is available to a borrower based upon a showing of financial hardship.

Income-based repayment plan (IBR). The IBR is similar to the ICR in that both cap the monthly payments at a percentage of discretionary income and Education forgives the remaining balance at the end of 25 years. 34 C.F.R. § 685.221.

while leaving Education the ability to recover loans. This protects the student loan program for future generations.

## MEMORANDUM

Plaintiff seeks a determination that the debt owed to the DOE is dischargeable under 11 U.S.C. § 523(a)(8), which provides, in pertinent part, that a debt for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded by a governmental unit, is not dischargeable in bankruptcy unless excepting the debt from discharge would impose an undue hardship on the debtor and the debtor's dependents.[3] The statute does not define "undue hardship," and that task has been committed to the courts.

The leading case on the standards for "undue hardship" is *Brunner v. N.Y. State Higher Educ. Serv. Corp.*, 831 F.2d 395 (2d Cir. 1987). See: *In re Pena*, 155 F.3d 1108 (9th Cir. 1998); *Faish v. Pa. Higher Educ. Assistance Auth.*, 72 F.3d 298 (3d Cir. 1995), *cert. denied*, 518 U.S. 1009 (1996); *Cheesman v. Tenn. Student Assistance Corp.*, 25 F.3d 356 (6th Cir. 1994), *cert. denied*, 513 U.S. 1081 (1995);

---

[3] Prior to amendments to this section made October 7, 1998 and effective for proceedings filed after that date, these debts could also be discharged if the debt first became due more than 7 years, excluding periods during which repayment was suspended, before the date of filing of the petition. 11 U.S.C. §523(a)(8)(A) (1998).

7

*Roberson v. Ill. Student Assistance Comm'n*, 999 F.2d 1132 (7th Cir. 1993); *Ammirati v. Nellie Mae Inc.*, 187 B.R. 902 (D.S.C. 1995), *aff'd*, 85 F.3d 615 (4th Cir. 1996).[4] *Brunner* requires the debtor to show:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for self and dependents if forced to repay the loans;
>
> (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
>
> (3) that the debtor has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d at 396. The Eleventh Circuit applies the *Brunner* test. *In re Cox*, 338 F.3d 1238, 1241 (11th Cir. 2003). The debtor bears the burden of proving all three prongs by a preponderance of the evidence. *Educational Credit Mgmt. Corp. v. Frushour (In re Frushour)*, 433 F.3d 393, 400-01 (4th Cir. 2005).

"Dischargeability should be based upon the certainty of hopelessness, not simply a present inability to fulfill financial commitment." *In re Roberson*, 999 F.2d 1132, 1136 (7th Cir. 1993). The three questions listed here must be answered

---

[4] The Eighth Circuit prefers a "totality of the circumstances" test, see Andresen v. Neb. Student Loan Program, Inc., 232 B.R. 127 (8th Cir. BAP 1999), but that "test" requires answering the same "core considerations" presented in a principled form by Brunner.

to assess whether any current inability to pay will persist for a significant portion of the repayment period - "the longest foreseeable period of time allowed for repayment of the loan," *In re Johnson*, 5 Bankr. Ct. Dec. 532, 544 (Bankr. E.D. Pa. 1979). To determine whether repayment will impose an undue hardship, the first and second parts of the *Brunner* test require consideration of the debtor's expenses and income potential, as well as the payment term and the installment amount required for the loan. The DOE makes available a variety of income-sensitive repayment options for financially-distressed debtors that allow the debtor to make reduced installment payments, over an extended payment period, based on the debtor's ability to pay.

To meet the third part of the *Brunner* test for discharge, the debtor must show that he or she has made a good faith effort to repay the loan. The legislative history of the 1998 changes to §523(a)(8), which extended the "undue hardship" requirement to all student loan bankruptcies, makes clear that Congress intended undue hardship claims to be measured in light of "the availability of various options to increase the affordability of student loan debt, including deferment, forbearance, cancellation and extended, graduated, income-contingent and income-sensitive repayment options." H.Rep. No. 750, 105th Cong. 2d Sess. 408 (1998).

In light of this articulation of congressional intent, DOE asserts that the "good faith" test cannot be met if the debtor has not made use of these various income-sensitive repayment options.

The DOE offers various repayment plans, including 'Income Contingent Repayment (ICR)' plan for Direct Loans and 'income based repayment (IBR)' for all loans, available to borrowers who demonstrate financial hardship and based on the individual's financial situation. Under IBR, a borrower's income is reviewed annually, adjusted accordingly and, after 25 years, the debt is discharged. 34 CFR § 682.215.

The Plaintiff has not alleged, nor met his burden of establishing, that repayment of his student loans would impose an undue hardship as required by 11 U.S.C. § 523(a)(8). Plaintiff has made no payments on these loans and has not pursued any administrative discharge options and/or income-driven repayment plans. Accordingly, Plaintiff fails to demonstrate that repayment of the debt to DOE would create an undue hardship, and therefore, his debt is non-dischargeable under 11 U.S.C. § 523(a)(8).

Federal Rule of Civil Procedure 12(b)(1) provides for the defense of lack of subject matter jurisdiction. Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of a complaint based on a failure to state a claim upon which relief can be granted. Here, the only issue that the bankruptcy court can properly determine

as part of an adversary proceeding is whether repayment of a student loan constitutes undue hardship under § 523(a)(8). To litigate undue hardship, a borrower has to first admit to having a valid student loan obligation. Plaintiff, however, appears to be challenging the validity of his loans due to misconduct by the school. To the extent he is alleging that the loans were not validly obtained, are unenforceable, or are entitled to discharge due to quality of education or fraud, he should file a claim in the district court.

     Plaintiff named the DOE and three other school entities as defendants. Counts one through five appear to be only against the schools or principles of the schools not DOE. To the extent they may be against DOE, Plaintiff should have filed a Federal Tort Claims Act (FTCA) form.  FTCA has explicit exhaustion requirements. Likewise any claim for failure to deny any administrative discharge request should be properly brought before the district court, not bankruptcy court and any denial would be under Administrative Procedures Act (APA) review (is agency decision arbitrary, capricious, abuse of discretion or otherwise not in accordance with law). 5 U.S.C. § 551 et seq.  Similarly, any Freedom of Information Act (FOIA) related issues can only be litigated in the district court.

     In addition, DOE adopts and asserts the arguments and case law set forth by co-defendant St. Joseph's College of Maine (ECF 39) to include the pleading standard of Fed. R. Civ. P. 8 (lack of sufficient factual allegations); the heightened

11

fraud pleading standard under Fed. R. Civ. P. 9(b); failure to comply with a court order pursuant to Fed. R. Civ. P. 41(b); and statute of limitations under Rule 12(b)(6).

WHEREFORE, Defendant DOE prays that this Court grant this Motion, and for such other and further relief as the Court deems just and proper.

    Respectfully submitted,

    JASON R. COODY
    Acting United States Attorney

    */s/ Corey J. Smith*
    Corey J. Smith
    Assistant United States Attorney
    Florida Bar No. 0120420
    111 North Adams Street, 4th Floor
    Tallahassee, FL  32301
    (850) 942-8430
    Fax: (850) 942-8466
    c.j.smith@usdoj.gov
    Counsel for U.S. Dept. of Education

## CERTIFICATE OF COMPLIANCE

The undersigned counsel has conferred with the Plaintiff in compliance with N.D.Fla.Loc.R. 9013-1(A), who objects to the relief requested in this motion.

## LOCAL RULE 7.1(F)

I HEREBY CERTIFY that this memorandum contains 2,525 words, per Microsoft Word's word count, which complies with the word limit requirements set forth in Local Rule 7.1(F).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the forgoing, will be sent this 25th day of October, via first class mail to the following:

| Julian Rodney Rooks, Jr.<br>3648 Dartford Lane<br>Tallahassee, FL 32311 | St. Matthew's University Inc<br>c/o Moya, Terry J., as Reg. Agent<br>12124 High Tech Avenue, Ste. 290<br>Orlando, FL 32817 |
|---|---|

*/s/ Corey J. Smith*
Corey J. Smith
Assistant U.S. Attorney